Kimberly Sherman, OSB 174646
Education, Environmental, & Estate Law Group LLC
P.O. Box 728
Eugene, Oregon, 97440
Tel: (503) 910-6172
kim.sherman@e3lawgroup.com

Marianne Dugan, OSB 932563
259 E. 5th Ave. Ste 200-D
Eugene, OR  97401
Tel: (541) 338-7072
mdugan@mdugan.com

        Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| RILEY DUNCAN<br><br>                Plaintiff,<br><br><br>    v.<br><br><br>EUGENE SCHOOL DISTRICT 4J<br><br>                Defendant. | **6:19-CV-00065**<br><br>COMPLAINT<br><br>Americans with Disabilities Act<br>42 U.S.C. § 12101 et seq.<br><br>Section 504 of the<br>Rehabilitation Act of 1973<br>29 U.S.C. § 794 et seq.<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT                                                        1 of 31

## I.     INTRODUCTION

1.      This action is brought by Plaintiff Riley Duncan ("Plaintiff") against Defendant Eugene School District 4J ("Defendant") for discrimination under Title II of the Americans with Disabilities Act ('the ADA"), 42 U.S.C. § 12101 to 12213, and Section 504 of The Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. §§ 701 *et seq.*; the ADA Amendments Act (ADAAA), Public Law 110-325, ADAAA, 42 U.S.C. § 12101 et seq. (2008); and relevant Oregon state laws, including ORS 12.110; ORS 12.160; ORS 659A.142; ORS 659A.875; and 659A.870 to O.R.S. 659A.890.[1]

2.      Although Plaintiff was eligible for special education services while a student in Defendant's education programs pursuant to the Individuals with Disabilities Education Act ("IDEA") (20 U.S.C. § 1400 et seq. ("IDEA"), 34 C.F.R. 300 et seq.), this action is <u>not</u> an action pursuant to the IDEA. Plaintiff's IDEA claims were exhausted through an administrative hearing order, and have been dismissed with prejudice.

3.      Defendant knowingly, improperly, and with deliberate indifference discriminated against a person by reason of his disability, by failing to take simple, no-cost, reasonable measures to accommodate Plaintiff's disabilities within Defendant's public school program, including those measures the District had previously approved as reasonable accommodations to Plaintiff's disabilities.

4.      Defendant acted with deliberate indifference, knowing that Plaintiff's requests for accommodations were protected under state and federal law and failing to respond appropriately

---

[1] *See generally Lowry ex rel. T.L. v. Sherwood Charter Sch.*, No. 03:13-cv-01562-HZ (D. Or. Mar. 4, 2014) (finding, *inter alia,* that ORS 12.110 applies to discrimination actions; and ORS 659A.142 is the most analogous law related to disability discrimination actions; and that "a plaintiff bringing an action for disability discrimination under any of the provisions in O.R.S. 659A.103 to O.R.S. 659A.145, is entitled to equitable relief, compensatory damages, punitive damages, and a jury trial. O.R.S. 659A.885(1), (2), (3)." ).

COMPLAINT

even when repeatedly notified by Plaintiff and his parents that Plaintiff's accommodations were not made available. Defendant school district acted with clear animus when a district teacher openly acted with discriminatory intent, informing Plaintiff that he <u>would not</u> implement the accommodations approved for the Plaintiff and instead graded Plaintiff's work in a discriminatory manner.

5.      Defendant further knowingly, improperly, and with deliberate indifference failed to protect the Plaintiff from retaliation and bullying by his classmates after the removal from the school of a teacher who was found to engage in discrimination against the Plaintiff and other person(s) with disabilities, which said failures served to create a hostile learning environment.

6.      Defendant maintained policies, and/or customs, and/or practices that directly discriminated against Plaintiff and his disabilities known to Defendants, and maintained policies, and/or customs, and/or practices that deliberately deprived Plaintiff of rights granted under the Constitution of the United States and other federal and state laws.

7.      Plaintiff continues to suffer the results of the discriminatory and bullying behavior perpetrated and/or permitted by the district in ongoing mental health and emotional distress.

## II.      JURISDICTION AND VENUE

8.      This is an action for declaratory and injunctive relief for discriminatory actions by Defendant, brought pursuant to Title II Americans with Disabilities Act ('the ADA"), 42 U.S.C. § 12101 to 12213, and Section 504 of The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*; the ADA Amendments Act (ADAAA), Public Law 110-325, ADAAA, 42 U.S.C. § 12101 et seq. (2008); and relevant Oregon state laws.

9.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(a) because this civil action arises under the ADA; Section 504 of the Rehabilitation Act of 1973; and the Constitution and laws of the United States.

10.    This court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

11.    Jurisdiction for state law claims exists under 28 U.S.C. § 1367.

12.    Plaintiff has exhausted his administrative remedies to the extent required under the IDEA, the Rehabilitation Act, and the Americans with Disabilities Act. Plaintiff filed a request for due process hearing with the Oregon Department of Education and Eugene School District 4J on July 12, 2018. Plaintiff raised claims under the IDEA, ADA, and § 504 of the Rehabilitation Act. Without convening a hearing, the administrative law judge dismissed all claims with prejudice by written order on October 17, 2018.

13.    The Plaintiff has standing to be before this court. At all times during the events detailed below, Plaintiff and his parents were residents of Eugene, Lane County, Oregon. The injuries described below are concrete and particularized actual injuries-in-fact. The injuries-in-fact were caused by the defendant's actions or refusals to act in a manner required by federal law. The relief requested is within the court's power to provide.

14.    Defendant is a public agency, located within this jurisdiction and transacts business in this jurisdiction, and a substantial portion of the acts giving rise to this action occurred in this jurisdiction.

15.    As a substantial portion of the acts or omissions giving rise to this complaint took place in the City of Eugene, Lane County, Oregon and the Defendant's principal place of business is Lane County, venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b).

### III.    PARTIES

Plaintiff  Riley Duncan

16.    On the date this case was commenced at the administrative level, Plaintiff Riley Duncan ("Plaintiff") was an 18-year-old adult male who previously attended public school at South

Eugene High School in Eugene School District 4J and graduated with an Oregon High School Diploma in June, 2017. Plaintiff qualified as a student with disabilities under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("§ 504"). Plaintiff was eligible for an Individualized Education Program ("IEP") under the disability category of Other Health Impaired (OHI). District described appropriate accommodations to classroom, testing, and medical environments in a 504 accommodations plan ("504 plan") beginning in 2012. Plaintiff reached the age of majority on August 22, 2018. Plaintiff was enrolled in the District's French Immersion Program from the first grade through his graduation from high school in June 2017.  Enrollment in a Language Immersion Program in the District is by lottery.

Defendant Eugene School District 4J

17.    Eugene School District 4J ("District") is a local government body whose responsibility is to oversee the public school education of students grades K through 12, or to age 21 in the case of some students with disabilities. The District is located Eugene, Oregon.  The District is a public entity under Title II of the ADA as defined in 28 U.S.C. § 12131(I) and 28 CFR § 35.104. The District is a recipient of federal financial assistance under 29 U.S.C. § 794.  The District uses said federal financial assistance in its program activities.

18.    The District's principal place of office is located at 200 N. Monroe Street, Eugene OR 97402.

## IV.    STATUTES OF LIMITATIONS

19.    Plaintiff's 19th birthday was August 22, 2018. Complaints filed under OAR 581-015-2345 (Hearing Request and Response) and OAR 581-015-2390 (Hearings under Section 504) must be filed within two years after the date of the act or omission (or the date that the party knew or should have known that an omission occurred) that gave rise to the hearing. OAR 581-

015-2345(3).

20.    The statute of limitations in an action alleging discrimination is tolled for one year after a

minor person attains 18 years of age.

> (1) Subject to subsection (2) of this section, if a person is entitled to bring an action
> mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 or 12.276, and at the time the
> cause of action accrues the person is a child who is younger than 18 years of age, the
> statute of limitation for commencing the action is tolled for so long as the person is
> younger than 18 years of age. )

> (2) The time for commencing an action may not be extended under subsection (1) of
> this section for more than five years, or for more than one year after the person attains
> 18 years of age, whichever occurs first.

Or. Rev. Stat. § 12.160(1-2)

21.    Therefore, the events at issue under this due process complaint include all events between

August 23, 2015 and August 22, 2017.

22.    Additionally, events and harms occurred in Plaintiff's senior year (school year 2016-

2017) that represented a continuing and ongoing hostile learning environment that was

established by Defendant's actions beginning in Plaintiff's freshman year. Plaintiff continues to

suffer economic and non-economic harm and injury as a result of those actions and events.

23.    Alternately, Plaintiff did not know, or should not have known, that Defendant's acts were

discriminatory in violation of state and federal law against him individually and that he had

individual standing to bring a claim against Defendant until December 31, 2017. Plaintiff's

parents engaged in multiple conversations and actions related to the events described herein and

sought to advocate for their son under the IDEA and § 504 of the Rehabilitation Act while

Plaintiff was a student in Defendant's school. Defendant school district established an alternate

educational placement for Plaintiff that Plaintiff and his parents were told was equivalent to the

education received by his non-disabled peers. The true impact of Defendant's actions on

Plaintiff's educational, emotional, and mental health were not known to Plaintiff until Spring

2017 through Spring 2018.

24.     Additionally, Plaintiff was not aware that he may have a private right of action on his

own standing, independent of the actions his parents took or could have taken, until he conferred

with, and retained, an attorney on December 31, 2017.

25.     Plaintiff's claims thus include events and facts from at least December 31, 2015.

## V.     BACKGROUND

26.     Plaintiff, a 2017 South Eugene High School (SEHS) graduate, was enrolled in both the

International High School (IHS) and the French Immersion programs offered by Eugene School

District 4J. Plaintiff was eligible for special education as a student with a specific learning

disability as of June 2008 and continued to be eligible until graduating in June 2017. In February

2017, Plaintiff was found eligible for special education as a student with Other Health

Impairment in addition to Specific Learning Disability. During this time period, District staff

who were involved in the events detailed below include (1) Principal of SEHS, Mr. Andy Dey

(Principal); (2) Director of Special Education, Dr. Cheryl Linder (Special Education Director);

(3) Superintendent, Dr. Gustavos Balderos (Superintendent); (4) Assistant Superintendent,

Charis McGuaghey (Assistant Superintendent); (5) Director of Secondary Education, Ms. BJ

Blake (Secondary Education Director); (6) IHS Head Teacher, Ms. Jessica Schaubtach (IHS

Head Teacher); and (7) Plaintiff's special education case manager, Mr. Joel Kuiper (Case

Manager).

27.     During the two school years in question (September 2015 through June 2016 and

September 2016 through June 2017), Plaintiff's IEPs included the following accommodations:

   *March 4, 2015 IEP*

   Preferential seating as determined between [Plaintiff], Teachers, and Parents
   When requested by student, parent, or case manager, provide alternate due dates
   on assignments

COMPLAINT                                                                      7 of 31

When requested by student, parent, or case manager, allow [Plaintiff] to test in another location

When requested by student, parent, or case manager, allow [Plaintiff] multiple opportunities to show proficiency on learning targets

When requested by student, parent, or case manager, provide private one on one check in with [Plaintiff], to check for understanding of task/assignment to complete

When requested by student, parent, or case manager, option to use digital materials when appropriate and possible

*February 17, 2015 IEP*

Preferential seating as determined between [Plaintiff], Teachers, and Parents

provide alternate due dates on assignments

allow [Plaintiff] to test in another location. This is best done with [Plaintiff] beginning the test in classroom and then finishing test in learning center

allow [Plaintiff] multiple opportunities to show proficiency on learning targets

provide private one on one check in with to check for understanding of task/assignment to complete

option to use digital materials when appropriate and possible

*February 16, 2016 IEP*

Preferential seating as determined between Riley, Teachers, and Parents

Late work should be accepted up to one week after notifying parents or learning center teacher, which allows for additional time to learn material

[Plaintiff] will receive a preview of the weekly lessons at the beginning of each week

allow [Plaintiff] to test in another location. This is best done with [Plaintiff] beginning the test in classroom and then finishing test in learning center

Provide alternate ways to show understanding of academic content without modifying course content standards

Gather the weekly/daily homework assignments and make sure that [Plaintiff] is aware of what is being asked for the upcoming week.

Copies of all tests and quizzes will be reviewed with [Plaintiff] in the learning center along with criteria for grading on the day they are reviewed in class

*February 6, 2017 IEP*

Copies of all tests and quizzes will be reviewed with [Plaintiff] in the learning center along with criteria for grading on the day they are reviewed in class

Gather the weekly/daily homework assignments and make sure that [Plaintiff] is aware of what is being asked for the upcoming week.

COMPLAINT                                                                              8 of 31

[Plaintiff] will receive a preview of the weekly lessons at the beginning of each week

[p]referential seating as determined between [Plaintiff], Teachers, and Parents

allow [Plaintiff] to test in another location. This is best done with [Plaintiff] beginning the test in classroom and then finishing test in learning center

Late work should be accepted up to one week after notifying parents or learning center teacher, which allows for additional time to learn material

Provide alternate ways to show understanding of academic content without modifying course content standards

28.     In addition, all IEPs throughout Plaintiff's high school years included 30 minutes per month of general education consultation as a support for school personnel.

## VI.    STATEMENT OF FACTS

29.     Following is a detailed, though partial, chronology of events from Parents' records, District records, and emails that underlie the discrimination claims for Plaintiff.

**School Year 2013-2014 (9th grade)**

30.     Plaintiff acknowledges that school year 2013-2014 falls outside the statute of limitations; however, narrative related to that school year provides background and explanation to the events that occurred later in 2015-2016 and 2016-2017.

31.     Plaintiff was enrolled in Mr. Mike Stasack's French Language class as a 9th grade student.

32.     Prior to April 2014, Parents emailed Plaintiff's Case Manager multiple times requesting that Mr. Stasask implement the accommodations as detailed in Plaintiff's IEP.

33.     On April 17, 2014, Parents received an email from Mr. Stasack responding "no" when asked by Case Manager to implement Plaintiff's IEP accommodations.

**School year 2014-2015 (10th grade)**

34.     None of Plaintiff's 10th grade classes were taught by Mr. Stasack; all teachers during this school year implemented the accommodations described in Student's IEP.

**School Year 2015-2016 (11th grade)**

35.     First Semester: Plaintiff regularly experienced difficulty in Mr. Stasack's French Language class because Mr. Stasack failed to make available Plaintiff's accommodations, as described in Plaintiff's IEP.

36.     November 2015: Plaintiff, Case Manager, and Mr. Stasack met to discuss Plaintiff's difficulties in Mr. Stasack's class that term. Mr. Stasack suggested that Plaintiff could improve his grade by raising his hand three times in each class, and further suggests that Plaintiff should leave the French Immersion program because he does not belong in the program.

37.     December 2, 2015: Parents emailed Assistant Principal regarding Mr. Stasack's continued non-compliance in implementing Plaintiff's IEP accommodations.

38.     December 9, 2015: Parents emailed Assistant Principal with further details of Mr. Stasack's violations of Plaintiff's IEP requirements, including: testing Plaintiff on materials not yet taught; failure to allow multiple opportunities to complete work or provide alternates to show mastery; refusal to accept homework submitted after the due date; failure to permit extra time on tests and quizzes; failure to retain tests and quizzes to review and master missed items; ambiguous grading criteria; and a lack of understanding about the impact of ADHD on a student's learning.

39.     January 7, 2016: An email from Mr. Stasack stated "no" to parent's request that Mr. Stasask implement Plaintiff's IEP accommodations (as detailed in 12/9/2015 email from Parents to Assistant Principal).

40.     January 29, 2016: Plaintiff participated in a meeting at SEHS with Assistant Principal, Case Manager, Mr. Stasack, and Plaintiff's Parents. Parents reported that Mr. Stasask belittled Plaintiff when Mr. Stasack made statements such as a claim that the French Immersion Program was a rigorous program meant only for students whom he described as "high achievers that are

'in love with the language' and must be 'highly motivated.'" Mr. Stasack made these statements with fervor, with frequent repetition in defense of his stance, and while criticizing parents for expecting Plaintiff to be in a program that was "not fit" for Plaintiff. Mr. Stasack stated that he graded Plaintiff differently due to his IEP (stating he was generous because "Plaintiff was not a distraction") and stating "I do not agree" when mother said "Plaintiff has a right to be in the program." Further, Mr. Stasack made it clear that he would not deviate from his syllabus, asked no questions about Plaintiff's disability or IEP accommodations, and was hostile and defensive in his tone.

41.    January 31, 2016: Parents emailed SEHS administrators expressing concerns about retribution that had already happened to Plaintiff, continued retribution, and discriminatory behavior. Parents stated a belief that Mr. Stasack's treatment of Plaintiff worsened in response to Parents' request that Plaintiff's IEP be implemented. Plaintiff stated a belief that Mr. Stasack was unwilling to help him.

42.    February 2016: Plaintiff's self-esteem and emotional stability was fragile. After participating in a sample SAT/ACT test, Plaintiff lost confidence. Parents contracted privately with a tutor to prepare Plaintiff for SAT/ACT preparation.

43.    February 1, 2016: Principal called Plaintiff's mother to express that Mr. Stasack was sorry and recognized his responsibilities. Plaintiff's mother persisted in the discrimination claim. Principal asked Parents to "think about it."

44.    February 3, 2016: Principal called Plaintiff's mother to say that a discrimination investigation was going to be opened and the family was not to speak with Mr. Stasack without an administrator present until the investigation was complete.

45.    February 8, 2016: Mr. Stasack stood in line at Costco behind Plaintiff's mother. Plaintiff's mother felt intimidated by Mr. Stasack's demeanor and close proximity. Plaintiff's

COMPLAINT                                                              11 of 31

mother felt further intimidated when Mr. Stasack followed her to her car in the Costco parking

lot. Plaintiff's mother later learned that Mr. Stasack had behaved in a similar manner to at least

two other mothers of SEHS students, who also had felt intimidated by his behavior.

46.    February 11, 2016: Parents of two additional SEHS French Immersion students

(identified as Parent #2 and Parent #3) contacted the SEHS Principal and shared their stories

about Mr. Stasack that were very similar to Plaintiff's experiences, including that Mr. Stasack

had not followed 504 plans; had engaged in public intimidation of the two of the mothers; and

was inflexible in assertion that he would not make IEP or § 504 accommodations available from

the syllabus. One of the parents also forwarded a letter she had written to the previous SEHS

principal that demonstrated the same behavior by Mr. Stasack years prior to Plaintiff's

experience.

47.    February 12, 2016: Meeting with SEHS Principal and Special Education Director. The

focus of the meeting was not about how the District would respond to harassment and

discrimination of the Plaintiff, but instead the discussion focused on ways the District could

adjust Plaintiff's IEP in order to manage the impacts from Mr. Stasack's behaviors, putting

expectations on other teachers to implement accommodations for Plaintiff. As a result, Plaintiff's

father asked for a formal grade review; to have an adult in the classroom Plaintiff in Mr.

Stasack's class; for another person to grade Plaintiff's work from Mr. Stasack's class; and for the

District to develop a better plan for the following year.

48.    February 24, 2016: Parents filed complaint with Teachers Standards and Practices

Commission (TSPC) against Mr. Stasack.

49.    February 24, 2016: Parents filed formal District Bullying/Harassment complaint against

Mr. Stasack.

50.    March 4, 2016: Meeting between Principal and Parents. Principal expressed that the

District was going to find Mr. Stasack guilty of discrimination and provide Plaintiff with another teacher for the remainder of the year, with other yet-to-be-announced plans for the following year. Principal also said they were changing Plaintiff's STEAM (Mr. Stasack) grade from the first semester term of the 2015-2016 school year. SEHS convened a grading committee to evaluate Mr. Stasack's grading which found consistent grading irregularities with Plaintiff's work. The Principal implied that the committee could identify certain students being targeted with Mr. Stasack's grading.

51.    As a result of these failures on the part of Defendant school district, and the failure of District administration to require staff adherence to Plaintiff's IEP and accommodations, Parents filed a Bullying/Harassment complaint with the District and with TSPC against Mr. Stasack. The District completed its investigation into Mr. Stasack's actions on March 28, 2016, amended April 13, 2016. The district found that Mr. Stasack had failed to implement Plaintiff's IEP accommodations.

52.    March 28, 2016: Parents received a letter from the District, signed by the Principal stating the District's findings of the investigation.

53.    April 3, 2016: Plaintiff's mother emailed the Principal that the March 28 letter: (1) did not specify discrimination; (2) did not describe the manner in which Mr. Stasack's actions had made Plaintiff feel inadequate; and (3) that there was no reference to the "I do not agree" [that Plaintiff has a right to be in the program] comment or any reference to Mr. Stasack's actions prior to the January 29, 2016 meeting.

54.    April 13, 2016: SEHS Principal delivered the amended results of the District's review of Parents and Plaintiff's letter of complaint. The District findings are quoted below:

- Alternative due dates were not routinely allowed with regard to homework. As a result, [Plaintiff] was denied an accommodation explicitly stated in his IEP.

- Additionally, [Plaintiff] was not allowed multiple opportunities to demonstrated proficiency or allowed extended time for tests as was a common practice in the implementation of Riley's IEP. Although [Plaintiff] was invited to attend Instructional Access times, he was not provided with one-on-one check ins with the teacher in a way that was accessible to him;

- Mr. Stasack acknowledged having made the comment in his meeting with you.

- Although he offered an explanation for the comment, he quickly acknowledged making the comment was an error in judgment and has since expressed his apologies for saying anything that offended the family;

- Mr. Stasack acknowledged that he disputed your statement that your son had a right to be in the French Immersion program. He quickly acknowledged his error;

- It is likely that failure to properly implement Riley's IEP had an impact on the degree to which [Plaintiff] was able to learn required material and as such negatively impacted Riley's grade for the term. After a review by an appeals panel, Riley's grade was changed from a D to a C for the term;

- Michael acknowledged having been at Costco the night you indicated he was behind Jennifer in line, he denied having any knowledge of who was in front of him or having any intent to intimidate or menace. We were not able to find any evidence to rebut his claim nor support yours. We are however committed to ensuring that all interactions between district employees and families are characterized by civility, a welcoming nature and one of support. We are deeply disappointed that this was not the case for your particular interaction and are committed to ensuring that nothing like this happens in the near or distant future;

- Given the profound lack of trust between Michael Stasack and Riley's family, Michael Stasack's classroom is not an appropriate placement for [Plaintiff] for the remainder of his education here at SEHS. [Plaintiff] is fully entitled to pursue his current academic program and will be supported in doing so with unquestioned implementation of his IEP. As such, [Plaintiff] will continue to follow the curriculum from the AP/IB French class independently and will be supported by weekly checkins with a native French licensed educator currently employed by the district for the third term of this academic year. While final plans are not yet in place for the following academic year, it is our commitment to you that [Plaintiff] be provided with an educational environment that is welcoming, safe and supportive. As soon as an alternative to Michael's class can be proposed, it will be presented to the family for your reflection and feedback. Under no circumstances will your son be disadvantaged by not being able to be enrolled in the classes that Mr. Stasack teaches.

55.    April 13, 2016: The letter from the Principal was amended to state that it was a discrimination investigation but did not specify that the District found Mr. Stasack guilty of discrimination. However, the District did state that as a result of the findings, the District would make some confidential staffing adjustments "designed to prevent a recurrence of the behaviors that led to your complaint." Also included with the letter was an invitation to submit a formal complaint to the Superintendent, which included Parents' February 24, 2016 complaint that had already been filed and a copy of the district's bullying and harassment policy.

56.    May 6, 2016: Administrators confirmed that Mr. Stasack would be reassigned to an elementary school in the District, effective the next school year. Mr. Stasack was scheduled to complete the 2015-2016 school year at SEHS.

57.    May 13, 2016: Parents, Parent #4 (a fourth parent of a fourth student with similar circumstances who was also in Mr. Stasack's class), Parent #2, and Parent #3 met with the District Superintendent to discuss their concerns and share their common stories about Mr. Stasack that had occurred in 2012, 2013, 2014 and 2016. Three of the four parents reported they had experienced public intimidation by Mr. Stasack. All four families submitted written statements of their experiences with Mr. Stasack's refusal to implement their children's IEP accommodations. All four families requested that their written statements be included in Mr. Stasack's personnel file.

58.    May 24, 2016: Led by a French Immersion 11th grade student (identified herein as "AS"), students in the French Immersion program organized by text with classmates a walkout to happen 1st period on May 25, 2016. The texts and planning excluded Plaintiff and Parent #4's child. The walkout was in protest of Mr. Stasack's reassignment to take effect in school year 2016-2017.

59.    May 24, 2016: In the evening, Ms. McLaughlin (French History teacher and teacher of

the independent study French Language class) and Principal learned of the student walkout planned for first period on May 25.

60.    May 25, 2016: For the walkout, all but four (of about 40) students got up and left Ms. McLaughlin's French History classroom to walk as a group to the Principal's office in support of Mr. Stasack and in protest of his being reassigned to an elementary school the following year. Principal reported that the students said, "It wasn't fair that Mr. Stasack had to leave over the 504 kids."

61.    Student #4 (who also had been removed from Mr. Stasack's class in 2012 to avoid Mr. Stasack's refusals to implement her 504 accommodations) arrived late to school that day and passed her classmates in the hall as they were walking to the Principal's office; she was told to "shut up and go back to class." She did not know why her classmates were marching to the office.

62.    Four students remained in the class: Plaintiff, two of Plaintiff's friends including student #4, and another female student.

63.    May 26: 2016: Mother spoke with the Assistant Superintendent about the walkout and the impact it had on Plaintiff and asked for help. The Assistant Superintendent also had a daughter in the French Immersion program who was one year behind Plaintiff; she said that when the lower grade French Immersion students got the invitation to participate, one of the students stood up and said, "This isn't right."

64.    May 27, 2016: Principal sent an email to the French Immersion families stating that he wanted to dismiss the rumors about Mr. Stasack's departure from SEHS. He stated, "I hope you will all understand that I, nor anyone else within the district, can publicly discuss personnel matters given their confidential nature. What I can say is that we are committed to ensuring your student continues to receive the highest quality instruction in pursuit of their French studies and

COMPLAINT                                                                    16 of 31

we are currently in the search process for South's next French Immersion faculty member. Mr.

Stasack has made many positive contributions to the French Immersion program in his four years

here and will now go on to do the same at another school in the district. I hope you will join us in

wishing him the best in his future endeavors."

65.    May 28, 2016: Plaintiff's mother sent an email to the Principal, Director of Special

Education, Superintendent, the Assistant Superintendent, and the IHS Head Teacher

documenting the walkout, in which she asked that the Parent's email & TSPC complaint be put

in Mr. Stasack's file as evidence of his behavior; described the bullying behavior that was

modeled by Mr. Stasack and emulated by students; and described the ways in which Mr.

Stasack's behaviors were in conflict with the IHS mission statement. Plaintiff's mother stated:

> Though all classes (9-12th grades) were invited and encouraged to participate [in the "walk out"], more than 90% of those that did were 11th graders

> The invitation was sent out via text and social media, though my son and another female student who have both been removed from Mr. Stasack's classroom due to his discriminatory and harassing behavior, were excluded in all of the correspondence and were, in fact, blindsided by the walkout. The female student arrived late that period and when seeing her class walk down the hall, she naturally started to join them, only to be told by her peers to shut her mouth and get back to class.

> One of the students that sent the organizational texts was in our home for over an hour the night before the walkout, with our son, along with her parent that knew of the plans, and did not say anything to our family. The parent is also the chairperson of the French Immersion parent group.

> Prior to this incident, I have been warned by that same parent that kids were jealous of my son and the other female, though most of the anger was directed at the female, not my son. The text reads that the kids are getting "preferential treatment" and quotes her daughter as saying "OMG...[other female] is taking AP French from Mme Suzie because she doesn't get along with Mr. Mike...so the rest of us are busting our butts in MM [Mr. Mike Stasack] and she's getting an auto A from MS [Madam Suzie McLaughlin]."

> The Frenchie kids have two classes where they are all together: 1st period with Mme Suzie and 3rd (?) period with Mr. Stasack. The fact that they chose to do this during 1st period - in Mme Suzie's class - when they knew [Plaintiff] &

COMPLAINT                                                                17 of 31

the other female would be in the classroom instead of the period with Mr. Stasack when they know they are not there is significant.

> There have been 2 days since this incident and neither my son nor I have been provided with an apology from any of the classmates or their parents, even though I have been in social situations with a few families since that time and [Plaintiff] has attended all of his classes.

66.    May 31, 2016: The Principal replied, stating that he could not guarantee the Parent's letter would be placed in Mr. Stasack's personnel file or added to the TSPC complaint. Further, Principal said SEHS staff were thinking of a way to address the French Immersion students' behaviors: "The focus of the conversation will be on ways in which students can most effectively utilize their voice and what information they are able to receive in answer to their questions based on the law. In no way is the intention to discuss the particulars of this specific situation but to give the students the chance to hear from those whom they believe to have answers they are looking for."

67.    May 31, 2016: The Associate Director of Human Resources said they would not put Plaintiff's mother's 5/28 email in Mr. Stasack's personnel file but would send it to the TSPC and stated that Mr. Stasack's attorney "has asked for, and is entitled to receive a copy of, documents being sent to TSPC."

68.    May 31, 2016: Parents and Plaintiff understood that administration intended to develop a lesson about student voice (Principal/student conversation) and to deliver that lesson to Ms. McLaughlin's first period French History class, the class that had led the walkout. Plaintiff asked that the planned "conversation" between the Principal and students in Ms. McLaughlin's class not take place as he felt it would lead to further targeting.

69.    May 31, 2016: Plaintiff's father sent an email to Principal, asking for a stop to the planned principal/student conversation, stating: "Mike Stasack has created an us versus them mentality and this is now being inadvertently perpetuated by the students. This talk will only

COMPLAINT                                                                      18 of 31

serve to identify and alienate Plaintiff and the other targeted student more. One thing that is clear to me, and history supports this idea, is that there are parents behind the information that the students are using.  If you allow students to give voice to their concerns and relay the answers back to the parents, this mass miscommunication will backfire and only Plaintiff and the other targeted student will be hurt by the process."

70.    Despite these requests by Plaintiff and Plaintiff's father, the Principal/student conversation took place. Ms. Jericho Dunn, SEHS Assistant Principal, taught the lesson. Administration did not forewarn Plaintiff, nor did administration remove student from the classroom during this lesson. Plaintiff felt additionally targeted and bullied as a result of the Principal/student "conversation."

71.    June 26, 2016: Plaintiff's mother sent an email to the Associate Director of Human Resources, the Assistant Superintendent, and SEHS Principal further describing the bullying behavior:

> The fact that Mr. Stasack set the tone for these special education kids to be treated as not deserving of participation in the French Immersion/IB program set the stage for nearly the entire class to think that it is OK to leave behind the kids with special needs and even to brazenly act in ways that was certain to leave them feeling powerless and ostracized. According to 4j's policy on Discrimination, Harassment & Bullying (https://www.4j.lane.edu/wp-content/uploads/2013/02/4j_ess_pbs_law.pdf), my son was left in a position to be unreasonably differentiated, with unwanted (planful) behavior, in a way that substantially interferes with his educational benefit by creating a hostile environment. ... The fact that an entire class acted as they did says to me that no individuals can be held responsible for this. Rather, there is some other force guiding and setting the culture for them that has caused such a hostile environment.  They are simply repeating what they experienced from an educator that should be trustworthy.

**School Year 2016-2017 (12th grade)**

72.    September 2, 2016: Parents learned from Plaintiff's course enrollment schedule that Greg Hopper-Moore had been hired as the new French teacher. His son was one of the students that walked out of class on May 27.  Parents emailed Principal asking for meeting with Mr. Hopper-

Moore, Special Ed teacher, Plaintiff, and Principal. Principal said he "wouldn't characterize the students' activities last year as walking out on Plaintiff and don't feel it would be fair or helpful to link the new teacher to that incident in any way. I think that was a very unfortunate and totally avoidable situation." Principal would not assist in arranging the meeting and denied any bullying by students had occurred.

73.    Early September 2016: Case Manager, Parents, Plaintiff, and Mr. Hopper-Moore met to discuss what had happened and what supports Plaintiff needed.

74.    March 21, 2017: Plaintiff's Mother reported to Assistant Superintendent that the French Immersion parents had discussed inviting Mr. Stasack to the French Immersion ceremony in June that is hosted by French Immersion parents but takes place at the SEHS cafeteria; Plaintiff's mother requested that Mr. Stasack not be allowed to attend any graduation ceremonies. The Assistant Superintendent said she would "get back to" Parents. After no response, Plaintiff's mother wrote again on April 14 and again on May 11. The Assistant Superintendent responded that, because the ceremonies were public events, the District could not stop Mr. Stasack from attending unless Parent had a restraining order.

75.    June 8, 2017: Plaintiff's mother learned from Parent of student #4 that special event sweatshirts were being ordered by graduating French Immersion students with the intention of wearing them to the French Immersion graduation ceremony on June 10, 2017. Plaintiff's mother emailed to the Superintendent, Assistant Superintendent, and SEHS Principal a photograph of a female French Immersion student, (AS), standing in SEHS wearing a sweatshirt that started with "Meeesieur Mike" and displayed more than 30 "sayings" associated only with Mr. Stasack. Plaintiff's mother called this behavior "harassment" and asked that the administrators stop the sweatshirts from being part of any graduation ceremony. SEHS Principal responded that he (the Principal) would attend the ceremony.

76.     June 8, 2017: Plaintiff, Plaintiff's mother, and Parent #4 met with Assistant

Superintendent, Director of Special Education, and Director of Secondary Education at District

Office. The parents and Plaintiff explained that: (1) the sweatshirts were ordered by student AS

and provided the order form with her name on it and a message from her; (2) not all of the

French Immersion students had been invited to order the sweatshirts (in particular Plaintiff and

student #4 were excluded); and (3) that the IHS office had distributed the sweatshirts to students.

Plaintiff confirmed that all of the statements on the sweatshirt were from Mr. Stasack's class.

Plaintiff spoke of his experiences, telling of having to defend his right to take tests in a quiet

place to other French Immersion students who confronted him at a social event about it. He

talked about how the other students don't understand, that they're not bad kids, but they just don't

understand. The more he talked, the more everyone realized how difficult this situation had been

for Plaintiff. By the time Plaintiff was done talking, the Assistant Superintendent had tears and

the others were silent. Plaintiff said he would talk to anyone about this so that it didn't happen to

another kid, but District staff assured him that it was their job to take care of him and that he

didn't need to do anything and that "they would put their heads together and come up with a

plan."

77.     Within two hours, as Plaintiff and his parents were getting dressed for Plaintiff's IHS

graduation ceremony, they received an email from Special Education Director stating, "In

wanting the best for both students the district has consulted with our attorney to determine what

we can and cannot do.  We have been advised that we have the authority to recommend that the

sweatshirt should not be worn to the graduation ceremony.  Andy Dey has done this.  We have

further been advised that the district does not have the authority to prohibit the free speech of

students, thus we cannot prohibit the wearing of the sweatshirts."

78.     Plaintiff's father replied, "As a matter of free speech, this really does not fit. The kids can

wear what they want, but if the school is distributing them, it changes. That means the school is supporting bullying two students with documented disabilities. I think that it gets lost that both these students have disabilities and are not typical students." There was no reply.

79.    June 9, 2017: Plaintiff's mother had 1.5-hour conversation with Principal and learned that Principal had called only a select group of families about the sweatshirts and offered no transparency about how that group was selected or who was included in it, further contributing to feelings of exclusion and harassment. Principal declined to take any measures against students involved in harassing and bullying behavior against Plaintiff, and suggested the family should pursue the matter with an attorney.

80.    June 10, 2017: One student wore the sweatshirt to the French Immersion graduation practice, but none wore them to the ceremony.

81.    June 11, 2017: Plaintiff's mother emailed Principal, Special Education Director, Assistant Superintendent, and Secondary Education Director stating that another student in the class was willing to speak with Principal about social media posts he had read and his discomfort with the treatment of Plaintiff and the female student, including posts from student AS. Plaintiff's mother also forwarded an email from AS's mother stating that AS knew not everyone had been invited to order sweatshirts. There was no response from the District.

82.    June 12, 2017: SEHS graduation. There were no consequences for any students who had engaged in bullying behavior. AS was one of three student speakers at the ceremony and spoke about how proud she was of her class' civil rights actions and about the power of what they had learned about civil rights and how to address bullying at SEHS. AS had engaged in discrimination, bullying behavior, and exclusion against Plaintiff and student #4. Administration was aware of Plaintiff's distress over these events. Despite this, Administration approved AS's speech and her public participation at the ceremony. Plaintiff's speech caused additional

emotional distress to Plaintiff.

83.    Fall 2017 through present: Plaintiff continues to experience mental health challenges as a result of the bullying and discrimination experienced as a student in Defendant school district's programs.

84.    December 31, 2017: Plaintiff retained an attorney related to these claims, after continuing to suffer emotional and physical harms from District's discriminatory actions while he was a freshman student enrolled in Wittenberg College.

## VII.    SUMMARY

85.    The purpose of the accommodations detailed in Plaintiff's IEPs related to provision of a quiet testing environment and extended time on tests and homework in order to accommodate the effects of ADHD on Plaintiff's learning and work production.

86.    Despite these enumerated accommodations in official District IEP documents, Defendant's employee Mr. Stasack repeatedly denied specific accommodations to Plaintiff. Further, by words and actions, Mr. Stasack telegraphed his belief that Plaintiff did not belong in the French Immersion Program or IHS program because his accommodations meant that those programs were not a "fit" for Plaintiff's potential. Mr. Stasack demonstrated this attitude in official meetings with administrators, Parents, and Plaintiff present, as well as in his interactions with the Plaintiff in class and on campus.

87.    Furthermore, as found by Defendant school district's internal investigation, Mr. Stasack discriminated against Plaintiff when he graded Plaintiff's work differently than he graded the work of non-disabled students.

88.    Defendant school district discriminated against Plaintiff when it failed to adequately supervise and train Mr. Stasack, or to discipline him or others to remedy his failures to implement Plaintiff's accommodations.

89.     Defendant school district discriminated against Plaintiff by failing to implement a Plan of Assistance for Improvement with clear accountability requirements, and by instead transferring Mr. Stasack to another school in the District, thereby potentially perpetuating the policy and practice of permitting individual teachers to discriminate against students with disabilities.

90.     Defendant school district discriminated against Plaintiff by removing Plaintiff from AP/IB French Language class and providing an inferior program to him. During spring term, 2016, Plaintiff engaged in French Language instruction in an independent study arrangement. Plaintiff's non-disabled classmates engaged in French Language instruction in a group setting, allowing for greater opportunity to hear and speak the French language in an interactive and fast paced environment and to more readily prepare for the AP French exams. Mr. Stasack was certified to provide French Language instruction and award IB credit in the International Baccalaureate program, and qualified to prepare students for the IB language exams. Further, Mr. Stasack was certified as an LCC College Now! Instructor.[2] By contrast, the instructor for Plaintiff's independent study arrangement was not certified to provide instruction in the International Baccalaureate program and was not a certified LCC College Now! instructor. The independent study program did not meet as often as the class taught by Mr. Stasack. The arrangement, as implemented by the District, denied Plaintiff access to a French Immersion experience that was equal to the educational program provided to his non-disabled peers; denied Plaintiff the opportunity to fully prepare for the IB Language exam; and denied Plaintiff the opportunity to earn college credit for enrollment in Defendant's 11th grade French Language

---

[2] LCC College Now! Is a partnership program between Eugene School District 4J and Lane Community College (LCC) whereby students enrolled in certain Eugene School District high school courses earn college credit through LCC. Therefore, students enrolled in Mr. Stasack's 11th grade French Language course were eligible for college credit upon earning a passing grade from Mr. Stasack.

COMPLAINT                                                                                    24 of 31

class taught by Mr. Stasack.

91.     Students in Mr. Stasack's French Language class witnessed and emulated Mr. Stasack's discriminatory and harassing behaviors toward Plaintiff and student #4.

92.     Defendant school district further discriminated against Plaintiff when it failed to address the bullying behaviors of Plaintiff's French Immersion classmates and failed to honor Plaintiff's request to _not_ hold the special lesson on equality delivered to the French Immersion students following the May 27th walkout.

93.     Defendant's failures resulted in creation of a hostile learning environment, thereby causing additional bullying and targeting behavior by his classmates, resulting in additional mental and emotional stress and anxiety to Plaintiff.

94.     The stress of the hostile learning environment in Plaintiff's 11th and 12th grade years had a negative impact on Plaintiff's performance on the International Baccalaureate exams (two in Grade 11 and five in Grade 12). Despite earning high scores on the ACT and SAT exams taken in the fall of his 11th Grade year, Plaintiff did not earn scores sufficient to be awarded an International Baccalaureate diploma, which caused economic damages in college credit awarded and college scholarships available to Plaintiff.

## FIRST CLAIM FOR RELIEF

(The Americans with Disabilities Act)

95.     Plaintiff incorporates by reference the allegations of all preceding paragraphs.

96.     Title II of the ADA prohibits a public entity from excluding a person with a disability from participating in, or denying the benefits of, the goods, services, programs and activities of the entity or otherwise discriminating against a person on the basis of disability.  42  U.S.C.  § 12132 et seq.

97.     At all times relevant to this action, the District was and is a public entity within the

meaning of Title II of the ADA, receives federal funding, and provides educational instruction and services to all students of appropriate age who reside within the school district boundaries.

98.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs or activities provided by the District.

99.     From September 2015 to June 2017, Defendant failed to provide reasonable accommodations to the Plaintiff that would ensure that the Plaintiff, an individual with disabilities, was educated with non-disabled students in an environment free from hostility, allowed to interact with non-disabled peers, and enjoyed the same benefits of the French Immersion and International High School programs that his non-disabled peers enjoyed.

100.    At all times relevant to this action, Defendant school district knew or had reason to know that Mr. Stasack engaged in discriminatory and harmful actions against Plaintiff, solely on the basis of his disability, and Defendant failed to remedy the events at the time of their occurrence.

101.    As a direct and proximate result of Defendant's violations of Title II of the ADA, Plaintiff was injured as set forth herein.

102.    At times relevant to this complaint, Defendant had notice that accommodations were required, Defendant put in place a specific written plan describing said accommodations, and Defendant deliberately and repeatedly failed to act upon that knowledge.

### SECOND CLAIM FOR RELIEF

(Discrimination in Violation of Section 504 of The Rehabilitation Act of 1973

("Section 504 Regulations") – 34 C.F.R. §§ 104.33 through 104.37)

103.    Plaintiff incorporates by reference the allegations of all preceding paragraphs.

104.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. and the regulations promulgated in 34 C.F.R. §§ 104.31 through 104.37 prohibit discrimination against

COMPLAINT                                                              26 of 31

people with disabilities in preschool, elementary, and secondary education programs by recipients of federal funding.  Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability…shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving  Federal financial assistance […].

29 U.S. Code § 794(a).

105.    Defendant School District has received substantial federal financial assistance at all relevant times.

106.    Plaintiff is an otherwise qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

107.    At all times relevant to this action, Defendant school district knew or had reason to know that Mr. Stasack engaged in discriminatory and harmful actions against Plaintiff, solely on the basis of his disability, and Defendant failed to remedy the events at the time of their occurrence.

108.    Defendant discriminated against Plaintiff in programs and activities receiving federal financial assistance solely because of his disability by failing to deliver reasonable accommodations; failing to provide for the education of each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person; failing to ensure that the educational placement decision was made in conformity with 34 C.F.R. § 104.34; failing to provide education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met; creating and supporting a hostile learning environment thereby failing to provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities; and permitting teachers and students to engage with impunity in bullying and harassment; in violation of 29 U.S.C. § 794 and 34 C.F.R. §§ 104.31

COMPLAINT                                                                                      27 of 31

through 104.37.

109.    As a proximate result of Defendant's violations of Section 504 of the Rehabilitation Act of 1973, the Plaintiff has been injured as set forth herein.

110.    At times relevant to this complaint, Defendant had notice that reasonable accommodations were available to the Plaintiff and deliberately failed to act upon that knowledge.

### THIRD CLAIM FOR RELIEF

(Discrimination in Violation of Oregon State Laws)

111.    Plaintiff incorporates by reference the allegations of all preceding paragraphs.

112.    At all times relevant to this action, Defendant was a public body as defined in ORS 174.108, serving as a public accommodation as defined in ORS 659A.400.

113.    At all times relevant to this action, Plaintiff was a person with a disability as defined in ORS 659A.104.

114.    At all times relevant to this action, Plaintiff requested reasonable accommodations as defined by ORS 659A.118.

115.    Oregon Revised Statutes and Administrative Rules prohibit discrimination against persons with disabilities. *See* ORS 659A103 (Unlawful discrimination against persons with disabilities); ORS 659A.142 (Discrimination against individual with disability by employment agency, labor organization, place of public accommodation, or state government prohibited); and ORS 659A.403 (Discrimination in place of public accommodation prohibited).

116.    Defendant discriminated against Plaintiff because of his disability by allowing Mr. Stasack to refuse to make reasonable accommodations for Plaintiff's disabilities, by enrolling Plaintiff in an alternate educational placement that was inferior to the placement and program offered to his non-disabled peers, and by allowing the establishment and maintenance of a hostile

learning environment by Defendant's staff and students at Defendant's school.

117.    Defendant discriminated against Plaintiff in programs and activities of public accommodation solely because of Plaintiff's disability by failing to deliver reasonable accommodations; failing to provide for the education of each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person; failing to provide education and related aids and services that are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met; creating and supporting a hostile learning environment thereby failing to provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities; and permitting teachers and students to engage with impunity in bullying and harassment; in violation of Oregon's laws prohibiting discrimination against persons with disabilities and pursuant to ORS 659A.885 (Civil Action).

### DEMAND FOR TRIAL BY JURY

118.    Plaintiff hereby demands a trial by jury for the causes of action described in this complaint.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

119.    A declaration that Defendant's policy, pattern and/or practice of failing to implement Section 504 plans for disability accommodation does not comply with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws;

120.    A declaration that Defendant's policy, pattern and/or practice of failing to mitigate hostile learning environments, harassment, and bullying discriminates against Plaintiff and other

similarly situated students with disabilities and fails to comply with the requirements of Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws;

121.    An order and judgment enjoining Defendant from violating Title II of the ADA,  Section 504 of the Rehabilitation Act of 1973, and Oregon disability laws, including anti-retaliation provisions that prohibit retaliation, harassment, or discrimination against anyone, disabled or not, on the basis of that person's efforts to oppose unlawful discriminatory practices;

122.    An order and judgment in favor of Plaintiff in an amount of economic money damages, incurred either by Plaintiff or Plaintiff's parents related to the events herein described, to be proven at trial, and $50,000 for future economic money damages related to Plaintiff's ongoing and future mental health care;

123.    Compensatory, consequential, and future damages in an amount of $100,000 including damages for pain, humiliation, anxiety, shame, embarrassment, mental anguish, emotional distress, and damage to Plaintiff's personal relations, and any and all other claims as allowed by law in an amount to be determined at trial;

124.    An award of Plaintiff's reasonable attorneys' fees and litigation expenses and costs, in the full amounts allowed by law, including expert witness fees pursuant to 29 U.S.C. § 794(b); 42 U.S.C. § 12133; and 42 U.S.C. § 12205.

125.    Pre- and post-judgment interest at the highest rate allowed by law;

126.    All such other and further relief as the Court deems just and equitable.


Respectfully submitted this 14th day of January 2019.

s/ Kimberly Sherman
Kimberly Sherman, OSB 174646
Education, Environmental, & Estate Law Group LLC
P.O. Box 728
Eugene, Oregon, 97440
Tel: (503) 910-6172

kim.sherman@e3lawgroup.com

s/ Marianne Dugan
Marianne Dugan, OSB 932563
259 E. 5th Ave. Ste 200-D
Eugene, OR  97401
Tel: (541) 338-7072
mdugan@mdugan.com

Attorneys for Plaintiff