UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RILEY DUNCAN,<br><br>            Plaintiff,<br><br>v.<br><br>EUGENE SCHOOL DISTRICT 4J,<br><br>            Defendant. | Case No.: 6:19-cv-00065-MK<br><br>OPINION AND ORDER<br><br>RE: DEFENDANT'S MOTION TO DISMISS |

**KASUBHAI, Magistrate Judge:**

  Plaintiff brought this action alleging that Eugene School District 4J ("Defendant" or the "District") violated the Individuals with Disabilities Education Act (the "IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), the Americans with Disabilities Act (the "ADA"), and Oregon Revised Statute Chapter 659A. ECF Nos. 1, 14. Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 11.

  Before the Court is Defendant's Motion to Dismiss. ECF No. 15. For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 15) is GRANTED as to the IDEA claim and the Oregon law claim; and is DENIED as to the ADA and Section 504 claims, and their related declaratory relief.

1 – OPINION AND ORDER

# BACKGROUND

Plaintiff alleges the following in the Complaint. Plaintiff was a student eligible for special education services and was enrolled in the International High School, International Baccalaureate, and the French Immersion Program offered by the District. First Am. Compl. ¶ 28, ECF No. 14. The District created an Individualized Education Program ("IEP") to provide specially designed instructions and related services, and to accommodate Plaintiff's disabilities. *Id.* ¶¶ 28-29.

During the 2013-14 school year (the ninth grade), Plaintiff was enrolled in a French language class taught by Michael Stasack ("Stasack") at South Eugene High School ("SEHS"). *Id.* ¶ 33. Stasack failed to implement the accommodations listed in Plaintiff's IEP. *Id.* ¶¶ 34-35.

During the 2014-15 school year (the tenth grade), Plaintiff was not enrolled in a class taught by Stasack. *Id.* ¶ 34. All of Plaintiff's teachers properly implemented Plaintiff's accommodations described in Plaintiff's IEP. *Id.* ¶ 36.

During the 2015-16 school year (the eleventh grade), Plaintiff again enrolled in Stasack's French language class. *Id.* ¶ 37. Plaintiff alleges that Stasack refused to implement the accommodations listed in Plaintiff's IEP and made belittling remarks towards him. *Id.* ¶¶ 37-45, 54. "Plaintiff's self-esteem and emotional stability was fragile." *Id.* ¶ 44. On January 31, 2016, Plaintiff's parents contacted SEHS administrators expressing concerns about the discriminatory behavior towards Plaintiff. *Id.* ¶ 43. Plaintiff's parents filed a bullying and harassment complaint against Stasack with the District and with the Teachers Standards and Practices Commission. *Id.* ¶¶ 50-51, 53.

The District completed its investigation in late March 2016 and found that Stasack had failed to implement Plaintiff's IEP accommodations. *Id.* ¶¶ 54, 58. The District offered Plaintiff

an alternative educational placement for the rest of the 2015-16 school year in which Plaintiff would be "fully entitled to pursue his current academic program and [would] be supported in doing so with unquestioned implementation of his IEP." *Id.* ¶ 57. Plaintiff was placed with a native French licensed educator for independent study. *Id.* Plaintiff alleges that this independent study placement was an inferior educational opportunity. *Id.* ¶ 175. The District also reassigned Stasack to another school for the following school year of 2016-17. *Id.* at 59. At the end of the 2015-16 school year, students in the French Immersion Program organized a walkout to protest Stasack's reassignment. *Id.* ¶ 61. The walkout excluded Plaintiff. *Id.*

In their subsequent email correspondence with SEHS, Plaintiff's parents complained that students bullied Plaintiff. *Id.* ¶ 68. Plaintiff's parents wrote: "The fact that Mr. Stasack set the tone for [the] special education kids to be treated as not deserving of participation in the French Immersion/IB program set the stage for nearly the entire class to think that is OK to leave behind the kids with special needs and even to brazenly act in ways that was certain to leave them feeling powerless and ostracized." *Id.* at ¶ 74. Plaintiff's parents also wrote that Plaintiff "was left in a position to be unreasonably differentiated … in a way that substantially interferes with his educational benefit by creating a hostile environment." *Id.*

During the 2016-17 school year (the twelfth grade), Plaintiff alleges that other students enrolled in the French Immersion Program bullied and harassed Plaintiff. *Id.* ¶¶ 77-85. Plaintiff's mother reported to SEHS that other students' parents planned to invite Stasack to the graduation ceremony and requested SEHS not allow Stasack's attendance. *Id.* ¶ 77. SEHS responded that it could not refuse Stasack's attendance because the ceremony was a public event. *Id.* Plaintiff's mother also reported to SEHS the "harassment" behavior by a student who stood in SEHS wearing a sweatshirt showing "Meeesieur Mike" and "sayings" associated only with

Stasack. *Id.* ¶ 78. Plaintiff alleges that the student ordered the sweatshirt and invited other students to order the sweatshirt. *Id.* ¶ 79. Plaintiff also alleges that the International High School office had distributed the sweatshirts to students. *Id.* SEHS declined to prohibit students from wearing the sweatshirts citing students' right to free speech, but SEHS recommended that the sweatshirts not be worn to the graduation ceremony. *Id.* ¶ 80.

One student wore the sweatshirt to the graduation rehearsal, but no one wore it at the graduation ceremony. *Id.* ¶ 83. At the graduation ceremony, one of the student speakers was the student who had "engaged in bullying behavior" towards Plaintiff. *Id.* ¶ 85. This student spoke that she was proud of her class' civil rights actions, what they had learned about civil rights and how to address bullying at SEHS. *Id.* Plaintiff alleges that even though SEHS was aware of Plaintiff's distress over these events, SEHS let the bullying student speak at the ceremony and approved her speech. *Id.* The student's speech caused additional emotional distress to Plaintiff. *Id.*

Plaintiff graduated in June 2017 and attended college. *Id.* ¶¶ 85, 87. He turned eighteen on August 22, 2017. *Id.* at Ex. 1, p. 9, ECF No. 14-1.

On July 12, 2018, Plaintiff filed a Request for a Due Process Hearing ("Due Process Complaint") with the Oregon Department of Education ("ODE") on his own behalf raising claims under the IDEA, Section 504, the ADA, and Oregon law. First Am. Compl. ¶ 13, ECF No. 14. The ODE referred this matter to the Office of Administrative Hearings ("OAH"). First Am. Compl. Ex. 1, p. 1, ECF No. 14-1. The Senior Administrative Law Judge ("ALJ") Joe L. Allen granted Defendant's Motion to Dismiss the Due Process Complaint and dismissed Plaintiff's Due Process Complaint with prejudice. *Id.* at Ex. 1, pp. 1-2, 9.

Plaintiff filed this action on January 15, 2019 "in appeal of the underlying due process hearing" *In the Matter of the Education of Student and Eugene School District 4J*, OAH Case No. 2018-ABC-01842 ("Final Order"). *See* Compl., ECF No. 1; First Am. Compl. 1, ECF No. 14. Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 15.

## LEGAL STANDARD

Where the plaintiff "fail[s] to state a claim upon which relief can be granted," the action must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level....

*Id.* at 555 (citations omitted). Moreover, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions – which alleged behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (citations and internal quotations omitted).

Where amendment would be futile, it is appropriate to dismiss the claim with prejudice. *See Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir.1986) ("Although

5 – OPINION AND ORDER

leave to amend 'shall be freely given when justice so requires,' it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit.").

## DISCUSSION

**I. General Framework of the IDEA, Section 504, and the ADA Claims**

The IDEA was enacted to ensure all children with certain physical or intellectual disabilities receive a free appropriate public education ("FAPE"). 20 U.S.C. § 1400. As defined in the IDEA, a FAPE comprises "special education and related services" — both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748-49 (2017) (citation and internal quotations omitted). The only relief available under the IDEA is relief for the denial of a FAPE. *Id.* at 752, 755.

"By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools." *Id.* at 756. Title II of the ADA prohibits any "public entity" from discriminating based on disability and Section 504 of the Rehabilitation Act prohibits discrimination based on disability in any "federally funded program or activity." 42 U.S.C. §§ 12131-32; 29 U.S.C. § 764(a). "In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Fry*, 137 S. Ct. at 756. Individuals may seek redress for violations of their rights under either law by bringing suits for injunctive relief or money damages. 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).

**II. Plaintiff's IDEA, ADA and Section 504 Claims**

Defendant moves to dismiss Plaintiff's IDEA claim because it falls outside the statute of limitations. Def.'s Mot. Dismiss 6-16, ECF No. 15. Defendant argues that Plaintiff's ADA and Section 504 claims are not discrimination claims but relate exclusively to the alleged denial of a FAPE. *Id.* at 13-15. With this premise, Defendant contends that Plaintiff's federal discrimination claims should be analyzed consistent with the purpose of IDEA and are also time barred. *Id.* at 6-16.

Plaintiff asserts that his federal law claims are not time barred and makes three arguments to support his position. First, the federal law claims are tolled by Oregon's minority tolling statute, Oregon Revised Statute § 12.160. Pl.'s Am. Resp. 3-14, ECF No. 20. Second, his federal law claims did not start to accrue until he, not his parents, discovered the claims under the "discovery rule." *Id.* at 14-15. Third, his hostile learning environment claim is not time barred because of the District's continuing violation. *Id.* at 15-16.

<u>A. Whether Plaintiff's ADA and Section 504 Claims are Claims Under the IDEA</u>

As outlined above, the IDEA addresses a different kind of relief from the ADA and Section 504. *Fry*, 137 S. Ct. at 756. The Court first addresses whether the premise of Defendant's contention stands. That is, whether Plaintiff's ADA and Section 504 claims are educational in nature.

Defendant argues that Plaintiff's discrimination claims are educational in nature because (1) Plaintiff's Complaint includes multiple examples of educational harm, not disability-based discrimination, and (2) Plaintiff's own characterization of his claims confirms they relate exclusively to the quality of his FAPE. Def.'s Mot. Dismiss 13-15, ECF No. 15. Defendant asserts that the *Fry* test crafted by the Supreme Court in the context of exhaustion is relevant

here. *Id.* at 13. In *Fry*, the Supreme Court established a two-part test to help determine whether the gravamen of a complaint concerns the denial of a FAPE or disability-based discrimination. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a non-school public facility? Second, could an adult at the school have pressed essentially the same grievance? *Fry*, 137 S. Ct. at 756. Defendant contends that Plaintiff could not have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school. Def.'s Mot. Dismiss 12, ECF No. 15.

Defendant's interpretation of the law does not comport with controlling caselaw. "[W]hether [a plaintiff's] injuries were, broadly speaking, 'educational' in nature" "is not the same as asking whether the gravamen of [the plaintiff's] complaint charges, and seeks relief for, the denial of a FAPE." *Fry*, 137, S. Ct. at 758; *see also*, *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 877 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) ("Nothing in the IDEA protects a school from non-IDEA liability simply because it was making a good-faith attempt to educate its disabled students. If the school's conduct constituted a violation of laws other than the IDEA, a plaintiff is entitled to hold the school responsible under those other laws."). Thus," the mere fact the allegedly [sic] wrongful conduct occurred in an educational setting, or had an educational goal, does not mean the claims pertain to a FAPE." *GM by & Through Mason v. Lincoln Cty. Sch. Dist.*, No. 6:16-CV-01739-JR, 2017 WL 2804996, at *4 (D. Or. Apr. 21, 2017), *report and recommendation adopted*, No. 6:16-CV-01739-JR, 2017 WL 2804949 (D. Or. June 28, 2017).

In his discrimination claims, Plaintiff is prosecuting his right to be educated equally in an environment free from hostility. First Am. Compl. ¶¶ 183, 196, ECF No. 14. Plaintiff alleges that he suffered stress and anxiety as a result of the unequal and hostile learning environment. *Id.*

¶ 197. He seeks economic damages for his ongoing mental health care as well as the pain and emotional harm he suffered as a result of the treatment. *Id.* ¶¶ 44, 212, 213. "While such treatment could certainly affect the quality of one's education, the harm [P]laintiff describes could exist even if his education was top notch." *Mason*, 2017 WL 2804996, at *4.

Plaintiff alleges that Stasack discriminated against him with belittling remarks. First Am. Compl. ¶¶ 42-44, ECF No. 14. For example, Stasack stated that the French Immersion Program was a rigorous program meant only for students who are "high achievers" and it was "not fit" for Plaintiff. *Id.* ¶ 42. Stasack also stated that "he graded Plaintiff differently due to his IEP (stating he was generous because 'Plaintiff was not a distraction')[.]" *Id.* When Plaintiff's mother said that "Plaintiff has a right to be in the program[,]" Stasack responded "I do not agree." *Id.* Plaintiff also alleges that students followed Stasack's behavior and bullied and harassed him. *Id.* ¶¶ 68, 74. Contrary to Defendant's assertion, Plaintiff could have brought essentially the same claim if the belittlement, bullying and harassment had occurred at a public facility that is not a school. Plaintiff also could have brought essentially the same claim if he were an adult in a school. The harm Plaintiff alleges could exist even if he were not a student of the school. For these reasons, Plaintiff's ADA and Section 504 claims do not actually seek relief for the denial of a FAPE under the IDEA. Therefore, the Court analyzes the IDEA claim separately from the ADA and Section 504 claims.

### B. Plaintiff's IDEA Claim

*i. Statute of Limitations and Minority Tolling*

The statute of limitations under the IDEA is two years from "the date the parent … knew or should have known about the alleged action that forms the basis of the complaint[.]" 20 U.S.C. § 1415(f)(3)(C). In Oregon, "a hearing [concerning the IEP, educational placement or the

provision of a free appropriate publication education] must be requested within two years after the date of the act or omission that gives rise to the right to request a hearing[.]" Or. Rev. Stat. § 343.165(3)(a).

The ALJ found that Plaintiff's Due Process Complaint was time barred by the two-year statute of limitations because the complaint must be limited to allegations arising before July 12, 2016[1] and the Due Process Complaint raised no allegations of procedural or substantive violations of the IDEA prior to July 12, 2016. First Am. Compl. Ex. 1, pp. 6-7, ECF No. 14-1. Defendant moves to dismiss Plaintiff's IDEA claim based on the ALJ's reasoning. Def.'s Mot. Dismiss 6, ECF No. 15.

This Court recently discussed the issue of minority tolling in the context of ADA and Section 504 claims "premised exclusively on educational harm to [the] plaintiff." *McIntyre v. Eugene School District 4J*, No. 6:18-CV-00768-JR, 2018 WL 7254251, at *1, 3, 4 (D. Or. Sept. 12, 2018), *report and recommendation adopted*, No. 6:18-CV-00768-MK, 2019 WL 294758 (D. Or. Jan. 23, 2019). Although the plaintiff in *McIntyre* did not allege an IDEA claim, the Court found that her own characterization of the ADA and Section 504 claims confirmed that "they related exclusively to the quality of her FAPE." *Id.* at * 4. Magistrate Judge Russo noted:

> the Ninth Circuit held that state statutory minority tolling is immaterial to claims asserted under the Education for Handicapped Act (the predecessor statute to the IDEA) because the Education for Handicapped Act affords parents standing and emphasizes the importance of remedying educational wrongs in the first instance. *Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 555-56 (9th Cir. 1987). Cases from within the Ninth Circuit have extended [the] *Alexopulos*' holding to disability claims under the ADA and Rehabilitation Act that are premised on the denial of a FAPE. *See*, *e.g.*, *Mullin[] v. Las Lomitas Elementary Dist.*, 2004 WL 2848021, [at] *4-6 (N.D. Cal. Apr. 13, 2004); *A.T. v. Dry Creek Joint Elementary Sch. Dist.*, 2017 WL 2654854, [at] *4-5 (E.D. Cal. June 20, 2017).

---

[1] The ALJ's Final Order states that the complaint must be limited to allegations arising before June 12, 2016, which appears to be an error because two years before Plaintiff's filing of the Due Process Complaint was July 12, 2016. *See* First Am. Compl. ¶ 13, ECF No. 14.

*Id.* The Court found that "state minority statutes are inconsistent with the federal IDEA's objective." *Id.* Further, "equitable tolling is likely not available simply because the defendant's website neglected to provide adequate information about state or federal discrimination laws. This is especially true given that plaintiff's complaint demonstrates her parents were coterminously aware of the alleged inadequacy of her education." *Id.* at *5.

Here, like the parents of the *McIntyre* plaintiff, Plaintiff's parents were aware of the alleged inadequacy of his education as early as the 2013-2014 school year. First Am. Compl. ¶¶ 34-35, ECF No. 14 ("Prior to April 2014, [Plaintiff's] [p]arents emailed Plaintiff's Case Manager multiple times requesting that Mr. Stasack implement the accommodations as detailed in Plaintiff's IEP." "On April 17, 2014, [Plaintiff's] [p]arents received an email from Mr. Stasack responding 'no' when asked by Case Manager to implement Plaintiff's IEP accommodations."). In fact, "Plaintiff acknowledges that school year 2013-2014 falls outside the statute of limitations." *Id.* ¶ 32. Plaintiff's parents also knew that Stasack refused to implement Plaintiff's IEP accommodations in the 2015-2016 school year. *See e.g.*, *id.* ¶ 41. Plaintiff also alleges that "Plaintiff's parents' claims were 'discovered' on March 28, 2016 when the district concluded its investigations of discriminatory treatment (refusal to implement accommodations) and discriminatory grading." *Id.* ¶ 109. Further, Plaintiff's parents "were informed of their procedural safeguards and rights[.]" *Id.* ¶ 110. Because the IDEA grants a private right of action to parents on behalf of their children, Plaintiff's parents could have filed the Due Process Complaint on behalf of Plaintiff before Plaintiff turned eighteen. *See Alexopulos*, 817 F.2d at 555-56. Following the Ninth Circuit's precedent and this Court's prior analysis, the Court finds that minority tolling statute does not apply to Plaintiff's IDEA claim. *Id.*

*ii. The Discovery Rule*

Plaintiff claims in the Complaint that his claim – which is "independent of the actions his parents took or could have taken" – is not time barred because he did not discover the claim until December 20, 2017. First Am. Compl. ¶¶ 100-102, ECF No. 14 (citing *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 944-45 (9th Cir. 2017) (holding that "the IDEA's statute of limitations requires courts to apply the discovery rule without limiting redressability to the two-year period that precedes the date when the parent or agency knew or should have known about the alleged action that forms the basis of the complaint.") (internal quotation marks omitted)). However, the *Avila* holding addressed the issue of discovery by the student's parents and does not support Plaintiff's assertion that the discovery rule extends to a student's later discovery. Additionally, Plaintiff's position is inconsistent with the IDEA's objective, because the IDEA accords Plaintiff's parents the right to bring an IDEA claim on behalf of the minor Plaintiff to seek the relief for the denial of a FAPE. Therefore, the *Avila* holding is unavailing to Plaintiff's argument of the discovery rule for his IDEA claim. Defendant's Motion to Dismiss the IDEA claim is GRANTED[2].

C. Plaintiff's ADA and Section 504 Claims

*i. Statute of Limitations*

Section 504 and the ADA do not include a specific statute of limitations. *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) ("Title II of the ADA does not contain an express statute of limitations."); *J.W. ex rel. J.E.W. v. Fresno Unified School Dist.*, 570 F.Supp.2d 1212, 1222 (E.D. Cal. 2008) ("Section 504 contains no statute of limitations."). "[I]n the absence of a

---

[2] Plaintiff also argues that the District's act was a continuing violation. However, Plaintiff does not specifically argue that the continuing violation doctrine applies to his IDEA claim. Plaintiff only cites authority for the continuing violation doctrine's application in discrimination claims, but not in IDEA claims. The Court therefore does not address the continuing violation doctrine for the IDEA claim.

federal statute of limitations for claims arising under [a federal act], the controlling statute of limitations is the most appropriate one provided by state law." *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir.1987). The District of Oregon has generally held that for non-employment claims brought under the Rehabilitation Act or the ADA, the most analogous Oregon statute is Oregon Revised Statute § 12.110, which provides a two-year statute of limitations. *Savona v. S. Or. Univ.*, 2018 WL 1547843, at *3 (D. Or. 2018); *A.F. by & through Feola v. Starbucks Corp.*, 2018 WL 1161385, at *3 (D. Or. 2018); *Updike v. Clackamas Cnty.*, 2015 WL 7722410, at *5 (D. Or. 2015); *Walden v. Dawson*, 2014 WL 5810824, at *6 (D. Or. 2014); *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 2014 WL 897123, at *9 (D. Or. 2014) ("the statute of limitations set forth in ORS 12.110(1), which governs general tort claims, was the more appropriate statute of limitations for discrimination claims brought pursuant to the ADA and the Rehabilitation Act …").

Defendant moves to dismiss the ADA and Section 504 claims based on events occurring before January 15, 2017 – two years before Plaintiff filed this action on January 15, 2019 – because they are time barred by the two-year statute of limitations. Def.'s Mot. Dismiss 8, ECF No. 15. As outlined above, the parties dispute three issues: minority tolling, the discovery rule, and continuing violation. The Court addresses them in turn.

 *ii. Minority Tolling*

As recognized by the *McIntyre* court, the Court is not aware of any precedent evaluating whether Oregon's minority tolling statute applies to ADA or Section 504 claims alleging the denial of a FAPE. *See McIntyre*, 2018 WL 7254251, at *4. Defendant's argument against minority tolling is solely based on its position that Plaintiff's discrimination claims are

educational in nature. Def.'s Mot. Dismiss 13-15, ECF No. 15. This argument fails because the Court finds that Plaintiff's ADA and Section 504 claims are not subsumed in the IDEA claim.

While this Court previously found that "state minority statutes are inconsistent with the federal IDEA's objective[,]" they are consistent with the objectives of the federal ADA and Rehabilitation Act. *See Fry*, 137 S. Ct. at 756 ("Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools."). Therefore, the Court finds that minority tolling applies to the ADA and Section 504 claims.

### *iii. The Discovery Rule*

Defendant argues that even if the minority statute tolled Plaintiff's claims[3], the claims are barred under Oregon Revised Statute §§ 12.110 and 12.160, because the time for commencing an action may not be extended for more than one year after Plaintiff turned eighteen. Def.'s Mot. Dismiss 16-17, ECF No. 15. Since Plaintiff turned eighteen on August 22, 2017 and he brought this action months later on January 15, 2019, Defendant contends that Plaintiff missed the deadline. Def.'s Mot. Dismiss 17, ECF No. 15.

Plaintiff responds that the date when Plaintiff discovered his causes of action – December 20, 2017 – should be the date for calculating statute of limitations under the "discovery rule." Pl.'s Am. Resp. 14, ECF No. 20. Plaintiff asserts that his parents' knowledge is irrelevant because they are not the plaintiffs here. Pl.'s Am. Resp. 14, ECF No. 20.

"Under federal law, … a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Johnson v. State of California*, 207 F.3d 650,

---

[3] Defendant's motion only refers to the IDEA claim when arguing the issue of the "discovery rule." Def.'s Mot. Dismiss 18, ECF No. 15. However, Plaintiff in response construes Defendant's argument to be that the discovery rule is irrelevant to Plaintiff's IDEA, ADA and Section 504 claims. Pl.'s Am. Resp. 14, ECF No. 20.

653 (9th Cir. 2000) (internal quotation marks omitted). "The 'traditional federal accrual rule' is the 'injury discovery' rule, under which 'discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.' " *Rotella v. Wood*, 528 U.S. 549, 555 (2000). When addressing the general issues of tort claim accrual and discovery, the United States Supreme Court adopted a rule under which the limitations period begins when a plaintiff knows that he or she has been injured and knows or should know the cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 113 (1979). "To excuse [the plaintiff] from promptly [protecting himself] by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the [defendant]." *Id.* at 123. Similarly, the Ninth Circuit has held that when the facts are sufficient to apprise the plaintiff of potential claims against a defendant, the plaintiff's claim started to accrue as soon as the plaintiff had knowledge of the injury. *Plumeau v. School District # 40 County of Yamhill*, 130 F.3d 432, 437 (9th Cir.1997).

Under these guidelines, the discovery rule applies and Plaintiff's discrimination claims started to accrue when he knew or should have known of the injury. *See Johnson*, 207 F.3d at 653; *see also*, *Rotella*, 528 U.S. at 555. Plaintiff knew of his injury – that he was not being treated equally because of his disability – when he was a minor. *See e.g.*, First Am. Compl. ¶¶ 42-44, ECF No. 14. Thus, Plaintiff had sufficient facts to be apprised of his potential discrimination claims against Defendant, even though he may not have discovered all the elements of the discrimination claims until months after he turned eighteen. *Plumeau*, 130 F.3d, 437.

Although Plaintiff's federal discrimination claims based on "discrete acts" would be time barred, Plaintiff's hostile learning environment theory "will not be time barred so long as all acts

which constitute the claim are part of the same unlawful [] practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-22, 122 S. Ct. 2061, 2080, 153 L. Ed. 2d 106 (2002) (holding that claims based on discrete discriminatory acts are time barred if filed after the statute of limitations has run.). The Court next addresses Plaintiff's argument of a continuing violation based on his hostile environment claim.

*iv. Continuing Violation*

Plaintiff argues that even if the statute of limitations "extends only to July 12, 2016," the Court should consider conduct that would ordinarily be time barred under the continuing violation theory. Pl.'s Am. Resp. 15, ECF No. 20.

Plaintiff filed the ADA and Section 504 claims on January 15, 2019, thus discrimination claims arising out of events occurring prior to January 15, 2017 are time barred. The Court first notes that Plaintiff's argument is premised on the incorrect date of July 12, 2016, which is two years before Plaintiff's filing of the Due Process Complaint concerning the denial of his FAPE under the IDEA. *Supra*, Discussion II.B. However, Plaintiff cites cases discussing the continuing violation doctrine in discrimination claims, not IDEA claims. *See* Pl.'s Am. Resp. 15, ECF No. 20. It is unclear whether Plaintiff makes the continuing violation argument for his IDEA claim or for his discrimination claims. Because the Court has dismissed Plaintiff's IDEA claim (and the application of the continuing violation doctrine to the IDEA claim would not revive it), the Court will only discuss the issue of continuing violation for his discrimination claims.

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. "[A] single act of harassment may not be actionable on its own." *Id.* "[P]laintiffs may recover for exposure to a hostile environment

whose time has long passed simply because the hostile environment has continued into the charge-filing period." *Id.* at 128. That is, an act contributing to the claim must occur within the filing period. *Id.* In the context of employment discrimination, the Supreme Court made it clear that an actionable hostile work environment claim requires that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). The determination of whether an actionable hostile work environment claim exists requires an examination of "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 103.

In order for Plaintiff's discrimination claims to be actionable, the hostile learning environment must have continued into the period after January 15, 2017. *Morgan*, 536 U.S. at 128. Plaintiff's allegations include events that occurred after January 15, 2017. First Am. Compl. ¶¶ 77-87, ECF No. 14. Between January 15, 2017 and his graduation in June 2017, Plaintiff alleges that Defendant did not stop students' bullying behavior towards him. *Id.* ¶ 81. Plaintiff also alleges that Defendant approved the graduation speech of a student who discriminated and bullied him, and the speech caused him additional emotional distress. *Id.* ¶ 85. He felt bullied and suffered distress when a student wore the sweatshirt in support of Stasack and spoke at the graduation ceremony regarding the class' "civil rights actions." *Id.* Prior to January 15, 2017, Plaintiff alleges that he experienced "ongoing bullying and harassment by classmates throughout Plaintiff's junior and senior years (school years 2015-2016 and 2016-2017)[.]" *Id.*

¶ 161. He alleges an ongoing discrimination by Stasack via his refusal to implement his IEP. *See id.* ¶¶ 37-42. Plaintiff felt bullied by the students' walkout as protest against Stasack's reassignment. *See id.* ¶¶ 61-68.

Applying the Supreme Court's framework of hostile work environment to Plaintiff's hostile learning environment claims, Plaintiff has alleged "sufficient factual matter, accepted as true, to state a claim" of discrimination in a hostile learning environment[4]. *See Ashcroft*, 556 U.S. at 678. The alleged hostile learning environment continued into the limitations period. Therefore, Plaintiff's discrimination claims overcome the motion to dismiss under the continuing violation doctrine. *Morgan*, 536 U.S. at 128; *Sosa*, 920 F.2d at 1455. Defendant's Motion to Dismiss against Plaintiff's ADA and Section 504 claims is DENIED.

**III. Discrimination Claims Under Oregon Law**

The Oregon Tort Claims Act ("OTCA") requires that the notice of claim against a public body must be provided within 270 days after the alleged loss or injury to a minor. Or. Rev. Stat. § 30.275(1) & (2)(b). Plaintiff submitted a settlement offer to Defendant on April 18, 2018. First Am. Compl. ¶ 168, ECF No. 14. Defendant moves to dismiss Plaintiff's state law claims because Plaintiff failed to provide a notice of claim under the OTCA. Def.'s Mot. Dismiss 19-20, ECF No. 15. Defendant first argues that the settlement offer letter is not a tort claim notice. *Id.* at 20. Alternatively, if it constitutes an actual notice, Defendant argues that it is only timely for events occurring after July 22, 2017, 270 days prior to April 18, 2018. *Id.* Because only paragraphs 86 and 87 allege events occurring after July 22, 2017 and they are unrelated to Defendant's actions, Plaintiff's state law claims should be dismissed. *Id.*

---

[4] Plaintiff argues that "genuine issues of dispute exist related to whether Plaintiff's harms represent an ongoing harm[.]" Pl.'s Am. Resp. 16, ECF No. 20. This is not the correct legal standard for a motion to dismiss and the incorrect statement of the law for stating a hostile environment claim.

Even if the Court construes the settlement letter as a sufficient notice under the OTCA, the Oregon law claims are time barred for the following reasons.

Plaintiff argues that the minority statute tolled the OTCA notice requirement because April 18, 2018 was less than 270 days following his eighteenth birthday. Pl.'s Am. Resp. 17, ECF No. 20; Def.'s Reply 5, ECF No. 21. However, the Oregon Court of Appeals has held that "under ORS 30.275(2), minors are required to give notice of a tort claim to a public body and its employees within 270 days of the discovery of their alleged injuries, and ORS 12.160 does not toll this notice period." *Catt v. Dep't of Human Servs.*, 251 Or.App. 488, 500, 284 P.3d 532, 540 (2012). Therefore, Plaintiff's OTCA notice is only timely for injuries occurring on or after July 22, 2017.

Plaintiff graduated high school before July 22, 2017. First Am. Compl. ¶ 85, ECF No. 14. Plaintiff does not allege any acts by Defendant occurring after July 22, 2017. *See generally*, First Am. Compl., ECF No. 14. Thus, Defendant's Motion to Dismiss against Plaintiff's Oregon discrimination claims is GRANTED.

Defendant alternatively raises the issue that Plaintiff's claim under Oregon Revised Statute § 659A.403 is time-barred under Oregon Revised Statute § 659A.875. Def.'s Mot. Dismiss 20-21, ECF No. 15. Because Plaintiff's Oregon discrimination claims are dismissed for failure to timely serve the OTCA notice, the Court does not reach this alternative argument.

**IV. Declaratory Relief**

Plaintiff seeks declaratory relief that Defendant's policies, patterns, and practices failed to implement his IEP and to mitigate a hostile learning environment, and that Defendant violated the IDEA, the ADA, Section 504 of the Rehabilitation Act, and Oregon disability laws. First Am. Compl. ¶¶ 209-10, ECF No. 14. Because Defendant's Motion to Dismiss the IDEA claim and

the Oregon law claims is granted, the Court only discusses the issue raised by Defendant against the ADA and Section 504 claims. *Supra*, Discussion II-III.

Defendant asserts that Plaintiff's graduation moots his declaratory relief because Plaintiff's claims are "rooted in allegations that the District denied him a FAPE[.]" Def.'s Mot. Dismiss 21, ECF No. 15 (citing *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) ("It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory or injunctive relief against a school's action or policy.")). However, as discussed above, "the mere fact the allegedly [sic] wrongful conduct occurred in an educational setting, or had an educational goal, does not mean the case pertains to a FAPE." *Mason*, 2017 WL 2804996, at *4; *supra*, Discussion II.A. Additionally, "[w]hen confronted with a violation of [discrimination], a district court is authorized to afford relief by means of … declaratory judgment …" *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357, 115 S. Ct. 879, 884, 130 L. Ed. 2d 852 (1995).

At issue are Plaintiff's discrimination claims to which declaratory relief may be afforded. *Id.* Therefore, Defendant's Motion to Dismiss against the declaratory relief as to Plaintiff's ADA and Section 504 claims is DENIED.

## CONCLUSION

Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The IDEA and Oregon law claims are dismissed with prejudice because they are time barred and it would be futile to amend.

DATED this <u>6th</u> day of January 2020.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge