UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

RILEY DUNCAN,

        Plaintiff,

    v.

EUGENE SCHOOL DISTRICT 4J

        Defendant.

Case No. 6:19-cv-00065-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff Riley Duncan initially filed this action against Defendant Eugene School District 4J ("Defendant"), alleging Defendant violated the Individuals with Disabilities Education Act (the "IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), the Americans with Disabilities Act (the "ADA"), and Oregon Revised Statute Chapter 659A. First Am. Compl., ECF No. 14. Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 11.

1 — OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 54. For the reasons set forth below, Defendant's Motion for Summary Judgement is DENIED.

## BACKGROUND

Plaintiff was a South Eugene High School ("SEHS") student enrolled in the International High School ("IHS"), International Baccalaureate ("IB"), and the French Immersion ("FI") programs offered by Defendant from September 2013 through June 2017. Declaration of Riley Duncan ("Duncan Decl.") ¶ 3, ECF No. 59-6. The FI program students are grouped as a cohort in each grade and the cohort students move through first through twelfth grades, giving the cohort a reputation as "close-knit." Declaration of Jericho Dunn ("Dunn Decl.") ¶ 4, ECF No. 59-8. Since 2008, Plaintiff was eligible for special education services under the categories of Specific Learning Disability ("SLD") and Other Health Impairment ("OHI") based on a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). Declaration of Jennifer Duncan ("J Duncan Decl.") ¶ 4, ECF No. 59-2. Defendant created an Individualized Education Program ("IEP") to accommodate Plaintiff's disabilities, providing specially designed instructions and related services for Plaintiff's academic success. Declaration of Rebekah R. Jacobson ("Jacobson Decl.") ¶ 4, ECF No. 55.

Starting in the 2013–2014 school year (Plaintiff's ninth grade), Plaintiff was enrolled in a French language class taught by Michael Stasack ("Stasack") at SEHS. *Id.* ¶¶ 8–9. Plaintiff testified that Stasack "treated [him] differently and frequently demeaned [him] in class related to [his] accommodations." Duncan. Decl. ¶ 5, ECF No. 59-6. Plaintiff further testified that "[w]hen [he] asked Mr. Stasack in class for permission to access [his] accommodation of testing in a separate place and receiving extra time on tests [Stasack] would flat out refuse the requested accommodation, every time." *Id.* SEHS Assistant Principal Jericho Dunn testified that Plaintiff

regularly expressed his frustration regarding Stasack's "hostility toward [Plaintiff's] requests for accommodations, at his efforts to humiliate [Plaintiff], and at his frequent statements to [Plaintiff] that [his] need for accommodations meant that [Plaintiff] did not belong in the FI program." Dunn Decl. ¶ 5, ECF No. 59-8. Dunn recalled a 2014 meeting with Stasack in which Stasack expressed that "[he does not] think ADHD constitutes a need for accommodation." *Id.* ¶ 8.

On January 29, 2016, Plaintiff participated in a meeting with Stasack, his parents, and Plaintiff's case manager. Duncan Decl. ¶ 6, ECF No. 59-6. At this meeting, Stasack told Plaintiff's mother he "disagreed that [Plaintiff] had a right to be enrolled in the FI program." *Id.* Plaintiff's parents contacted SEHS administrators expressing concerns about the discriminatory behavior towards Plaintiff and a belief that "[Stasack was] actively trying to force [Plaintiff] out of the French Immersion program." Declaration of Kimberly Sherman ("Sherman Decl.") Ex. 5 at 1, ECF No. 59-1. In a Letter of Suspension addressed to Stasack, Defendant found "[o]f greater concern [to Defendant] than any of the above incidents in isolation, is that [Stasack] continue[s] to openly display bias against disabled students and resist providing accommodations." *Id.* at 2. Significantly, Defendant found that Stasack's practices were not isolated because "SEHS now has two separate families who have justifiably demanded that [Stasack] not teach their student" and that Stasack "discriminated against a student with a disability, exposed [Defendant] to legal liability, and neglected several basic duties of a teacher." *Id.* at 3.

Following Plaintiff's meeting with Stasack in January 2016, Plaintiff testified that his "classmates began to treat [him] differently and began to ostracize [him] and that he felt as if he was "going to class in an environment that felt hostile." Duncan Decl. ¶ 5–8, ECF No. 59-6.

3 — OPINION AND ORDER

Assistant Principal Dunn witnessed instances in which "FI classmates appeared irritated and almost hostile towards [Plaintiff]" despite "an expectation that if [Dunn] was in the room, the students were usually on their best behavior." Dunn Decl. ¶ 10, ECF No. 59-8.

Defendant reassigned Stasack to another school for the 2016–2017 school year. *Id.* ¶ 16. On May 26, 2016, after learning about Stasack's reassignment, FI students organized a walkout during a class taught by Suzie McLauchlin ("McLauchlin"). Declaration of Ada Sprengelmeyer ("Sprengelmeyer Decl."), ¶¶ 4–5, ECF No. 56; Jacobson Decl. ¶ 7, Ex. 4, ECF No. 55. Multiple SEHS students testified the walkout was staged as a protest against "the 504 kids" causing Stasack to be transferred. Duncan Decl. ¶¶ 15–19, ECF No. 59-6; Declaration of Sydney Bowers ("Bowers Decl.") ¶¶ 6–7, ECF No. 59-4; Declaration of Gaetan Rebeyrol ("Rebeyrol Decl.") ¶ 2, ECF No. 59-9. One SEHS student testified the walkout was "not related to any students with disabilities." Sprengelmeyer Decl. ¶ 4. Assistant Principal Dunn, however, recalled "one conversation with an FI student who pointedly asked [him] if Messieur Mike was being transferred because of [Plaintiff]." Dunn Decl. ¶ 12, ECF No. 59-8. Dunn further recalled administrative meetings that "included discussions about FI students feeling like Mike Stasack's transfer was [Plaintiff's] fault." *Id.* ¶ 13. One SEHS student testified that McLauchlin "confided that students had come to [McLauchlin] three days before the walkout to tell her their plans." Declaration of Lexyngton McIntyre ("McIntyre Decl.") ¶ 13, ECF No. 59-3. Dunn and McLauchlin held a class on microaggressions shortly after the student walkout, despite multiple requests from Plaintiff and Plaintiff's parents not to hold such a class. Duncan Decl. ¶¶ 20, 21, ECF No. 59-6. During this lecture on microaggressions, a SEHS student with 504 disabilities offered "that there are many instances in which someone with a learning disability could be offended by not using person first language, etc." when she "was cut off by Ada Sprengelmeyer

who spoke over [her] to say that this experience was invalid, [and] that no one in [the FI program] would do this." McIntyre Decl. ¶ 30, ECF No. 59-3. McIntyre further testified that McLauchlin and Dunn failed to keep Sprengelmeyer from talking over her, and that "no further action was taken" despite speaking to Dunn after the lesson. *Id.*

In 2017, SEHS student Sprengelmeyer organized the purchase of FI sweatshirts as part of an "annual tradition." Sprengelmeyer Decl. ¶ 7; J Duncan Decl. ¶ 32, ECF No. 59-2. An on-campus IHS office had been the point of disbursement of the apparel, giving the appearance that Defendant sanctioned the apparel's production. J Duncan Decl. ¶ 32, ECF No. 59-2. SEHS FI students testified that the purchase of the sweatshirt was not being offered to all graduating FI seniors as Plaintiff and McIntyre were not invited to participate in the design or invited to purchase the sweatshirt. J Duncan Decl. ¶ 33, ECF No. 59-2; Bowers Decl. ¶ 9, ECF No. 59-4; McIntyre Decl. ¶ 37, ECF No. 59-3. The main text of the sweatshirt features Stasack's name followed by phrases primarily used by, or attributed to, Stasack which caused further distress to Plaintiff. McIntyre Decl. ¶¶ 36, 38, ECF No. 59-3. When Plaintiff's mother reached out to Defendant to find out "what steps had been taken to prevent the wearing of the sweatshirts at graduation or other year-end celebration events," SEHS Principal Andy Dey ("Principal Dey") told her "[Defendant] cannot prohibit the wearing of the sweatshirts" despite the dress code policy stating: "Student dress and grooming may not interfere with or disrupt the educational environment of the student or others." J Duncan Decl. ¶¶ 33, 34, ECF No. 59-2.

SEHS student Sprengelmeyer, who helped organize the walkout and sweatshirt distribution, was selected to speak at Plaintiff's graduation, and made multiple references to her class's "civil rights actions." Sprengelmeyer Decl. ¶ 10, ECF No. 56; J Duncan Decl. ¶ 42, ECF No. 59-2. Plaintiff's mother testified "[Sprengelmeyer] was allowed to knowingly discriminate

5 — OPINION AND ORDER

and exclude her classmates in a way that was clearly harassment, and yet she was allowed to shine at their final time together, with the administrators' approval and full knowledge of her participation." J Duncan Decl. ¶ 42, ECF No. 59-2.

## PROCEDURAL BACKGROUND

Plaintiff filed a Request for a Due Process Hearing ("Due Process Complaint") with the Oregon Department of Education ("ODE") raising claims under the IDEA, Section 504, the ADA, and Oregon law. Answer ¶ 9, ECF No. 29. The ODE referred this matter to the Office of Administrative Hearings ("OAH"). *Id.* Senior Administrative Law Judge ("ALJ") Joe L. Allen granted Defendant's Motion to Dismiss the Due Process Complaint with prejudice. *Id.*

Plaintiff filed this action on January 15, 2019 "in appeal of the underlying due process hearing," *In the Matter of the Education of Student and Eugene School District 4J*, OAH Case No. 2018-ABC-01842 ("Final Order"). ECF No. 14. Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 15. This Court granted Defendant's Motion to Dismiss as to Plaintiff's IDEA and state law claims and denied the motion as to Plaintiff's ADA and Section 504 claims. ECF No. 27. In its denial relating to Plaintiff's ADA and Section 504 claims, this Court applied a hostile work environment analysis to Plaintiff's hostile learning environment claim. *Id.* at 16–17. Defendant subsequently filed this Motion for Summary Judgment which Plaintiff opposes. ECF Nos. 54, 59. Parties submitted supplemental briefing to the Court to discuss the impact, if any, of the Ninth Circuit Court of Appeals' opinion in the related case *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902 (9th Cir. 2020) on this motion before the Court. ECF Nos. 51, 52.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630. Because the motion before the Court is Defendant's Motion for Summary Judgment, the Court construes the evidence in the light most favorable to Plaintiff. *JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016).

**DISCUSSION**

**I.     Ninth Circuit Hostile Learning Environment Claims**

Defendant asserts that summary judgment is appropriate as to Plaintiff's hostile learning environment claim because the Ninth Circuit "has declined to recognize a hostile learning

environment claim based on disability." Mot. Summ. J. at 8, ECF No. 54. In so arguing, Defendant primarily relies on *Toma v. Univ. of Hawaii* to argue that "the U.S. District Court for the District of Hawaii did not find any Ninth Circuit decision that supported a hostile learning environment under the Rehabilitation Act or Title VII." *Id.* at 9 (citing *Toma v. Univ. of Hawaii*, 304 F. Supp. 3d 956, 964 (D. Haw. 2018)).

While the Ninth Circuit has yet to address whether a plaintiff can bring a hostile learning environment claim under Section 504 and the ADA, the court has recognized hostile learning environment claims under other statutes. The Ninth Circuit first recognized hostile learning environment claims in the 1998 cases *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022 (9th Cir. 1998) and *Oona R.-S.- by Kate S. v. McCaffrey,* 143 F.3d 473 (9th Cir. 1998). In *Monteiro*, the court found that a school district that failed to respond to racial harassment, despite students' and parents' complaints, sufficiently violated Title VI as interpreted by the Department of Education. *Monteiro*, 158 F.3d 1033. Significantly, the court determined that the Department of Education's interpretation in enforcing Title VI "is entitled to a high degree of deference by the courts so long as it does not conflict with a clearly expressed congressional intent and is reasonable." *Id.* The court in *Oona R.-S.- by Kate S.* similarly found a school district "liable for their own discriminatory actions in failing to remedy a known hostile [learning] environment." *Oona R.-S.- by Kate S.*, 143 F.3d 476. In making this determination, the court analogized "the duties of school officials to remedy known sexual harassment under Title IX, to those of employers under Title VII," and looked to other circuits' application of "Title VII principles to hostile environment claims under Title IX." *Id.* More recently, the Ninth Circuit in *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006) recognized that "[b]ecause Title IX and Title VI use the same language, they should, as a matter of statutory interpretation,

be read to require the same levels of protection and equality[,]" and, in doing so, found that the plaintiff's hostile learning environment claim existed under Title IX. *Stanley*, 433 F.3d 1135 (citation omitted).

Here, the Department of Education has provided guidance on enforcing Section 504 and the ADA. While not binding, the Department of Education's interpretation of the subject is, per instruction from *Monteiro,* entitled to a high degree of deference:

> Section 504 and [the ADA] prohibit discrimination on the basis of disability. School districts may violate these civil rights statutes and the Department's implementing regulations when peer harassment based on race, color, national origin, sex, or disability is sufficiently serious that it creates a *hostile environment* and such harassment is encouraged, tolerated, not adequately addressed, or ignored by school employees.

*See* U.S. Dep't of Educ., Off. of C.R., Dear Colleague Letter (Oct. 26, 2010) (emphasis added). Notably, the language of both Section 504 and the are substantially similar to that of Title IX, which in relevant part provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a) (1988). Additionally, the Ninth Circuit has signaled before that it would be receptive to a disability-based hostile learning environment claim. First, in the 2003 case *Brown v. City of Tucson,* 336 F.3d 1181, 1190 (9th Cir. 2003), the court found that "[t]he district court's decision to look to Title VII case law for guidance in addressing [Plaintiff's] § 503(b) claim [was] understandable" due to the number of courts that "have expressly dealt with this provision of the ADA . . . without much discussion." *Brown v. City of Tucson,* 336 F.3d 1181, fn 13 (9th Cir. 2003). In its 2020 decision *McIntyre v. Eugene Sch. Dist. 4J,* No. 19-35186 (9th Cir. 2020), the

Ninth Circuit considered that it would be inclined to review a disability-based hostile learning environment claim, explaining:

> Although we have not resolved the issue, every circuit to have done so has concluded that disability-based claims for hostile work environment are actionable under the ADA. *See Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (agreeing with the five other circuits to reach that same conclusion); *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003). We need not resolve that question here, but the weight of authority supports the conclusion that a hypothetical plaintiff could bring essentially the same claim in different circumstances.

*McIntyre v. Eugene Sch. Dist. 4J*, No. 19-35186, at *23 (9th Cir. 2020). Applying the Department of Education's choice language in enforcing Section 504 and the ADA with the Ninth Circuit's prior findings that statutes with substantially similar language be read to require the same levels of protection and equality, this Court concludes that the ADA and Section 504 require the same protection provided by analogous statutes such as Titles VII and IX, and the Plaintiff may proceed with a hostile learning environment claim under the ADA and Section 504.

## II.   Hostile Learning Environment Claim Elements

Defendant contends that even if Plaintiff's hostile learning environment claim is actionable, Plaintiff's claim still fails as a matter of law because "Plaintiff's alleged harassment was not based on Plaintiff's disability and was not sufficiently severe or pervasive to create a hostile educational environment." Mot. Summ. J. at 10, ECF No. 54.

The Court will consider whether an actionable hostile learning environment exists under the ADA by employing the analytical framework used in Title VII claims. The elements Plaintiff must prove are: (1) the person has been subject to harassment based on the person's disability; (2) the disability-based harassment was unwelcome; and (3) the harassment is sufficiently severe

or pervasive that it alters the conditions of [their] education and creates an abusive educational environment. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (internal quotations omitted) (identifying the elements of a hostile environment under Title VII); *see also Guckenberger v. Bos. Univ.,* 957 F. Supp. 306 (D. Mass. 1997). Determining whether Plaintiff's claims fail as a matter of law requires fact-specific analysis, and so the Court reviews each element of a hostile learning environment claim.

### A. Disability-Based Harassment

Defendant asserts that there is no evidence that any alleged harassment was based on Plaintiff's disability. Mot. Summ. J. at 13, ECF No. 54. Defendant exclusively relies on the production of the FI Sweatshirts and SEHS Student Sprengelmeyer's graduation speech to find Plaintiff "falls short of the standard for a hostile learning environment." *Id.* at 15.

Plaintiff, however, testified about a number of separate incidents, from which a jury could find that Plaintiff suffered disability-based harassment. SEHS Assistant Principal Jericho Dunn testified that Plaintiff regularly expressed his frustration to Dunn about Stasack's "hostility toward [Plaintiff's] requests for accommodations, at his efforts to humiliate [Plaintiff], and at his frequent statements to [Plaintiff] that [his] need for accommodations meant that [Plaintiff] did not belong in the FI program." Dunn Decl. ¶ 5, ECF No. 59-8. Assistant Principal Dunn further recalled a 2014 meeting with Stasack in which Stasack expressed that "[he does not] think ADHD constitutes a need for accommodation." *Id.* ¶ 8. Dunn similarly witnessed instances in which "FI classmates appeared irritated and almost hostile towards [Plaintiff]" despite "an expectation that if [Dunn] was in the room, the students were usually on their best behavior." *Id.* ¶ 10. Stasack also told Plaintiff's mother he "disagreed that [Plaintiff] had a right to be enrolled in the FI program," leading Plaintiff's parents to contact SEHS administrators about the

discriminatory behavior towards Plaintiff and a belief that "[Stasack was] actively trying to force [Plaintiff] out of the French Immersion program." Sherman Decl. at 1, ECF No. 59. In a Letter of Suspension addressed to Stasack, Defendant found "[o]f greater concern [to Defendant] than any of the above incidents in isolation, is that [Stasack] continue[s] to openly display bias against disabled students and resist providing accommodations." *Id.* at 2. Significantly, Defendant found that Stasack's practices were not isolated as "SEHS now has two separate families who have justifiably demanded that [Stasack] not teach their student" and that Stasack "discriminated against a student with a disability, exposed [Defendant] to legal liability, and neglected several basic duties of a teacher." *Id.* at 3.

Viewing the facts in the non-moving party's favor, a reasonable jury could conclude from the evidence in the record that Plaintiff experienced harassment based on his disability.

**B. Unwelcome Harassment**

Defendant similarly argues that there is no evidence that demonstrates Plaintiff was subject to unwelcome harassment. Mot. Summ. J. at 11, ECF No. 54.

The Ninth Circuit has found harassment as unwelcome in Title VII cases when a plaintiff "repeatedly rebuff[s] [the conduct] and eventually report[s] [] conduct to the company." *Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1055 (9th Cir. 2007) (finding that the defendant's conduct was sexual and unwelcome due to the plaintiff's response to defendant's advances).

Here, Plaintiff has testified to multiple instances in which he was the subject of unwelcome harassment including: (1) FI teacher Michael Stasack's failure to implement IEP accommodations for Plaintiff; (2) Stasack's reported statements that Plaintiff did not have a right to be in the FI program; (3) the May 25, 2016 walkout protesting Stasack's transfer out of SEHS, because of "the 504 kids"; (4) Plaintiff's intentional exclusion from the distribution of

sweatshirts for FI program students at SEHS; (5) continued targeting of Plaintiff in a group chat among FI students; and (6) an FI student targeting Plaintiff in her graduation speech relating to Plaintiff's disability. *See* Pl.'s Rep. Br. at 6–10, ECF No. 59. Plaintiff testified to rebuffing these experiences of harassment, as corroborated in SEHS Assistant Principal Jericho Dunn's testimony where Plaintiff regularly expressed his frustration regarding Stasack's "hostility toward [Plaintiff's] requests for accommodations, at his efforts to humiliate [Plaintiff], and at his frequent statements to [Plaintiff] that [his] need for accommodations meant that [Plaintiff] did not belong in the FI program." Dunn Decl. ¶ 5, ECF No. 59-8. Additionally, Plaintiff's mother testified to sending emails and meeting with SEHS administrators, and eventually filing multiple complaints regarding the harassment Plaintiff faced from both Stasack and SEHS students. J. Duncan Decl. ¶ ¶ 5, 7–8, 10–13, 18–19, 21–25, 28, 31–33, 37–38, ECF No. 59-2.

Viewing the record in the light most favorable to the non-moving party, a reasonable jury could conclude from the evidence in the record that Plaintiff was subject to unwelcome harassment that Plaintiff had rebuffed and reported multiple times.

### C. Severe or Pervasive Harassment

Defendant urges this Court to conclude as a matter of law that the harassment Plaintiff experienced was neither severe nor pervasive and that it did not alter Plaintiff's education, and it did not create an abusive educational environment. Mot. Summ. J. at 15–19, ECF No. 54. Defendant argues "Plaintiff raises no genuine issue of material fact that the environment was so pervasive and abusive as to be considered a hostile learning environment." *Id.* at 18. Plaintiff counters that in order to survive a motion for summary judgement "there is no requirement that the conduct be both [severe and pervasive]." Pl.'s Rep. Br. at 19 (citing *Zetwick v. Cty. Of Yolo,* 850 F.3d 436, 442-443 (9th Cir. 2017)), ECF No. 59.

For Plaintiff to prevail at trial, he must prove the harassment he experienced was sufficiently severe *or* pervasive to alter the conditions of his education and create an objectively abusive learning environment. *See Zetwick v. Cty. Of Yolo*, 850 F.3d 436, 442-443 (9th Cir. 2017) (quotation omitted). In hostile environment claims under Title VII, the Supreme Court's decision in *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993) explains how the Court may determine whether the harassment Plaintiff experienced meets the threshold for severe *or* pervasive:

> When the workplace permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, 106, that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' . . . Title VII is violated.
>
> This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in *Meritor,* "mere utterance of an ... epithet which engenders offensive feelings in a[n] employee," *ibid.* (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII.
>
> But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment . . . can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive . . . offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor* . . . merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

*Harris,* 510 U.S. 17, 21–22 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 (1986)). Applying the reasoning in *Harris* to a hostile learning environment claim under the ADA and Section 504, courts must determine whether an environment is sufficiently severe or pervasive by "looking at all the circumstances" including the "frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Arizona ex rel. Horne v. Geo Grp., Inc.,* 816 F.3d 1189, 1206 (9th Cir. 2016) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Monteiro v. Tempe Union High School Dist.,* 158 F.3d 1022, 1033 (9th Cir. 1998) ("Whether a hostile educational environment exists is a question of fact, determined with reference to the totality of the circumstances."). While the effect on a plaintiff's psychological well-being is relevant to the subjective component of the analysis, its presence, or absence, is not dispositive on the issue of severity or pervasiveness, as "no single factor is required." *See Harris,* 510 U.S. 17, 23. Additionally, "[a]lthough a single act can be enough, . . . generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." *Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991).

Here, Plaintiff testified to several incidents of harassment. Pl.'s Rep. Br. at 16–36, ECF No. 59. Plaintiff testified that from September 2013 to March 2016, Plaintiff's FI teacher Stasack "engaged in a pattern of discriminatory and harmful actions against him" including: "belittl[ing] [Plaintiff]" "indicating that [Stasack] did not believe Plaintiff deserved to be enrolled in the FI program" stating that "ADHD was [not] a real disability and that [Plaintiff] just needed to try harder" and "refus[ing] to consistently implement [Plaintiff's] accommodations." Pl.'s Rep. Br. at 23, ECF No. 59. Plaintiff testified to several incidents in which Stasack and SEHS administrators caused him to feel "humiliated," "defeated and helpless," "depressed," and "afraid." Duncan Decl. ¶ ¶ 5–6, 18, ECF No. 59-6. Defendant further testified that "[a]round February or March 2017, [he] began experiencing severe headaches that [his] doctor attributed to stress" and that he frequently "[had] to defend [his] right to take tests in a quiet place and with

extended time to other FI students that confronted [him]." *Id.* ¶¶ 27, 32. Plaintiff's mother testified that she "remember[s] feeling fearful for [her] son's emotional wellbeing" and how during the 2016 meeting with Stasack, "[Plaintiff] was distraught and feeling very bad about himself, so much so, that he had a tough time raising his head." J Duncan Decl. ¶¶ 5, 33, ECF No. 59-2.

Defendant's own internal investigation found that "Stasack intentionally discriminated against a student with a disability in violation of school district policy, and that some of the discriminatory practices may have materially impacted [Plaintiff's] performance and grades." Sherman Decl. ¶ 10, Ex. 12, ECF No. 59-1. After this finding, Defendant removed Plaintiff from Stasack's class and allowed him to take an independent study with McLauchlin to help him prepare for the Advanced Placement ("AP") French exam. Duncan Decl. ¶ 12, ECF 59-6. Plaintiff testified that while Stasack's class "met five days a week for seventy-minute periods to study French language and prepare for the [AP] French language exam," he only "met with Ms. McLauchlin for an hour, two times per week." *Id.* Plaintiff further testified that "it was because of the inadequate instruction he received" he did not score high enough on the exam to receive AP credit. *Id.* ¶ 13.

Plaintiff also testified that harassment from his peers contributed to the hostile learning environment up through Plaintiff's graduation in June 2017. *Id.* ¶ 31. As discussed previously, SEHS Assistant Principal Dunn witnessed how "FI students picked up on Mike Stasack's disdain for [Plaintiff] and [his] needs for accommodations in his classroom" and " FI [s]tudents behave[d] as though [Plaintiff was] not [a] welcome member[] of their group.") Dunn Decl. ¶ 9, ECF No. 59-8. When Defendant transferred Stasack out of SEHS, Plaintiff's classmate "recall[ed] students and parents complaining about [Plaintiff] being responsible for Mike

Stasack's transfer from South Eugene High School at the end of the 2015–2016 school year." Declaration of Joseph Hoffman ("Hoffman Decl.") ¶ 10, ECF No. 59-7. Plaintiff testified "[feeling] that [his] classmate [after being confronted about his accommodations] was equating our accommodations with a form of cheating." Duncan Decl. ¶ 10, ECF No. 59-8. One of Plaintiff's classmates with a 504 disability also testified that a SEHS student asked "if [her] parents or other '504 kids' had threatened to harm the school district if Mr. Stasack [was not] moved." McIntyre Decl. ¶ 41, ECF No. 59-4.

Viewing the record in the light most favorable to the non-moving party, a reasonable jury could conclude from the evidence in the record that Plaintiff was subject to sufficiently severe or pervasive harassment.

Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that "issue is inappropriate for resolution on summary judgment." *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 54) is DENIED.

DATED this 26th day of July 2021.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He / Him)  
United States Magistrate Judge